Danilo KONVALINKA, Appellant,

v.

UNITED STATES, Appellee.

No. 2551.

Municipal Court of Appeals for the District of Columbia.

Argued April 25, 1960.

Decided July 19, 1960.

William J. Garber, Washington, D. C., for appellant.

John Robert Schmertz, Jr., Asst. U. S. Atty., Washington, D. C., with whom Oliver Gasch, U. S. Atty., and Carl W. Belcher, Asst. U. S. Atty., Washington, D. C., were on the brief, for appellee.

Before HOOD and QUINN, Associate Judges, and CAYTON (Chief Judge, Retired) sitting by designation under Code § 11–776(b).

HOOD, Associate Judge.

Appellant, who is an Austrian national married to an American citizen, was charged with simple assault on a fourteen-year-old boy in violation of Code 1951, 22–504. After pleading not guilty and electing trial without a jury, appellant was found guilty by the trial court and sentenced to pay a fine of $100 or serve thirty days in jail. This appeal followed.

Much evidence was presented to the trial court, the substance of which was as follows. The fourteen-year-old complaining witness testified that on the morning of October 4, 1959, while he was doing some part-time work in the basement of appellant's Georgetown shop, appellant took him on his lap, unzipped his trousers and fondled his genitals for about a minute. While this was happening the boy said he picked up a sharp cutting tool which he found within reach and which he intended to use to defend himself. Before he had an opportunity to use the tool appellant left to answer a telephone upstairs. While appellant was absent from the basement the boy fled the premises through a basement door, climbed a fence and ran north on the east side of Wisconsin Avenue for approximately five blocks.

At that point in his flight, "probably about five minutes" after the incident according to the boy, he approached a police officer who was allowed to testify that the boy was "quite out of breath and said, 'Officer, Officer,' I could not quite—he started

rambling on, I couldn't quite make out what he was saying." The officer testified that he finally quieted the boy who told him appellant had done "some nasty things to him." In response to the officer's question about what he meant by "nasty things," the boy answered, " 'He started to mess around and play around with me.' " The officer also told the court: "I had him elaborate a little more and he finally told me he had sat him down in his lap in the basement of the premise, unzipped his fly and began to play with his penis."

Arrested shortly after the encounter of the officer and the boy, appellant denied the boy's charges then and during his trial. He admitted, however, that the boy, who was the son of an acquaintance, had been working for him that day for the first time. The boy had been employed since about 9:00 a. m. doing light tasks about the premises. After 11:00 a. m. the boy was working in and out of the basement while appellant was repairing a music box at his work bench in the basement. Appellant testified that the boy then told him he wanted to leave early; this surprised appellant for he had assumed the boy would work until 4:00 or 4:30 p. m.

Shortly after this conversation, around 11:30 a. m., appellant went upstairs to answer the telephone. He stated the call was from his wife who customarily calls when she is at work, as she was that morning. On his return to the basement he noticed the absence of the boy and he assumed, after a search, the boy probably had gone home. Appellant admitted that he at one point during the morning patted the boy on the back. Patting on the back in this instance was a "more European gesture" than American; and the record indicates that "in patting the back the left arm is around the left shoulder and the right arm is on the right shoulder." Regarding the cutting tool the boy had testified about, appellant stated that the boy had told him he had found it while sweeping the sidewalk outside the shop and asked could he keep it. Appellant told him he could have it.

Testifying for her husband, appellant's wife said she had called her husband on August 4 at about 11:30 a. m.; there was nothing unusual in the tone of his voice and he sounded completely normal and unflustered. As to their married life, sexual relations with her husband had always been normal and frequent. The tool which the boy and her husband had testified about, she said, was one she used for sewing; it was always kept in the sewing machine in the basement.

Impressive reputation evidence was presented by the defense: ten witnesses testified as to appellant's reputation for good morals and veracity and the statements of two absent witnesses concerning his reputation were read into evidence. Furthermore, two psychiatrists testified as expert witnesses for the defense that they had examined appellant on three or four occasions between the middle of September 1959 to the first part of October 1959 and concluded he "had no abnormal sexual tendencies or deviations." One of the psychiatrists also added that "abnormal sexual tendencies would not come on suddenly, but would develop over a period of time."

In finding appellant guilty the trial judge made the following statement:

" * * * in view of the law and the evidence in this case, including the expert testimony carefully considered from the standpoint of the prosecution and the defendant, along with the reasonable deductions to be drawn from the evidence as adduced at the trial and giving the greatest possible weight to the testimony of previous good character and reputation, the Court nevertheless has no reasonable doubt as to the guilt of the accused and therefore the judgment is guilty as charged."

The attack on the trial judge's finding is centered on the effect of the testimony of the police officer concerning the statement of the boy when he met the officer on Wisconsin Avenue. Appellant argues that

the recent holding in Wilson v. United States, 106 U.S.App.D.C. 226, 271 F.2d 492, precludes a finding of guilt if the Government produces no more evidence than the uncorroborated testimony of the alleged victim; that corroboration in the Wilson sense does not include the extrajudicial statement of the complainant, or, in other words, the corpus delicti of the crime is not proved by the complainant's testimony and his spontaneous utterances as testified to by other witnesses; and that there must be independent corroboration of the complaining witness's charges.

If this court disagrees with his interpretation of the Wilson case, then appellant urges that we set aside his conviction on the authority of Farrar v. United States, D.C.Cir., 275 F.2d 868. He argues that on the basis of the array of evidence presented by appellant a reasonable mind must have a reasonable doubt as to his guilt.

■ Although appellant was charged with simple assault, Code 1951, 22–504,[1] the homosexual nature of the assault demands treating with great caution the boy's accusation against appellant and requires of the Government the most convincing kind of proof.[2] With this in mind, we find no grounds for reversing the conviction.

■ In Wilson, supra, the United States Court of Appeals for the District of Columbia Circuit summed up a series of cases involving sexual charges by children and laid down the rule that "the corpus delicti in a case such as this may not be established by the child's uncorroborated testimony on the witness stand." 106 U.S.App.D.C. at page 227, 271 F.2d at page 493. It is of

importance in understanding Wilson to note that the court did not say that spontaneous exclamations of the child could not be corroborative of the testimony adduced at trial; in fact, in citing several earlier cases the court indicated that its holding did not exclude such corroboration.[3] For instance, the Wilson opinion in no way conflicts with the cited case of Brown v. United States, 80 U.S.App.D.C. 270, 272, 152 F.2d 138, 140, in which is found the statement: "if a child makes spontaneous statements they are admissible in evidence when a foundation is laid for them, and either the child's condition or the child's testimony may lay the foundation." In Wilson there was only the direct testimony of the young complainant, there was no corroboration of her testimony by her spontaneous utterances or otherwise.

■ Viewed in light of Brown and the cases following it, the Wilson holding is a logical extension of the court's oft-expressed and understandable caution with the sexual accusations of children. As a result of Wilson neither the spontaneous exclamation of a child alone nor the uncorroborated testimony of a child by itself can establish the corpus delicti of the alleged sexual crime against the child. So in the case before us if the Government had only the testimony of the boy to rely on, we would have to reverse the judgment. The uncorroborated testimony of the complainant would be insufficient. Where, however, as here, the Government not only produces the complaining witness who testifies and thus lays a foundation for the introduction of his spontaneous exclamations, but also presents evidence as to the spontaneous statements of the complainant, then

---

1. Appellant was charged first with taking indecent liberties with a child, Code 1951, 22–3501, but this was later reduced to simple assault.

2. Guarro v. United States, 99 U.S.App.D.C. 97, 237 F.2d 578; Kelly v. United States, 90 U.S.App.D.C. 125, 194 F.2d 150.

3. Fountain v. United States, 98 U.S.App.D.C. 389, 236 F.2d 684; Jones v. United States, 97 U.S.App.D.C. 291, 231 F.2d 244; Brown v. United States, 80 U.S.App.D.C. 270, 152 F.2d 138. In these cases convictions were reversed because the spontaneous utterances of the alleged victims were the only evidence presented by the Government to show the corpus delicti of the crimes charged.

the Government has carried its burden of proving the corpus delicti.

Appellant does not question the spontaneity of the boy's statement to the police officer; he merely denies that under Wilson the statement provides corroboration of the boy's testimony at trial. Because of the serious nature of the charge, however, we have examined the record and have determined there is no doubt concerning the statement's admissibility as a spontaneous utterance. The boy had been running and was excited when he made the statement to the officer; the words were uttered about five minutes after the incident; and finally, the fact that he detailed what he meant by "nasty things" in response to the officer's question is of no moment.[4]

■ Having disposed of appellant's interpretation of the Wilson case, we now turn to his belief that a reasonable mind could not have entertained anything but a reasonable doubt about his guilt in this case. Appellant relies on the recently-decided cases of Farrar v. United States, D.C.Cir., 275 F.2d 868, and Hopkins v. United States, D.C.Cir., 275 F.2d 155. In Farrar the Circuit Court held that on the basis of what was apparently incredible evidence appellant's guilt on a rape charge was not proved beyond a reasonable doubt. Hopkins dealt with an insanity defense in an abortion case and is not really applicable here.

The Circuit Court has reversed other convictions because it found in different factual situations a reasonable doubt as to the guilt of the accused due to a total lack of substantial evidence to supprt the verdict.[5] But here there is no such total lack of evidence to support the trial judge's finding.

Basically, the issue presented to the trial judge resolved itself into one of credibility. The testimony of the boy and appellant was completely contradictory, and the judge believed the boy. Though the evidence might have raised a reasonable doubt, it cannot be said that it had to raise a reasonable doubt in the mind of the trier of fact. The evidence was such that he could believe the boy and not appellant.[6] It is not for this court to say the judge erred on the evidence before him; he had the inestimable advantage over us of viewing and hearing the witnesses as they gave their testimony. Martin v. United States, D.C.Cir., 225 F.2d 945.

■ Finally, appellant seems to argue that the impressive reputation evidence should have created a reasonable doubt as to his guilt, and he cites Kelly v. United States, 90 U.S.App.D.C. 125, 194 F.2d 150, to support his view. We do not agree. As this court has said, "Certainly that case [Kelly] does not make a decision of innocence or guilt depend upon an array of character witnesses, or a lack of it." King v. United States, D.C.Mun.App., 90 A.2d 229, 231. Admitting that reputation evidence of good character can "alone create a reasonable doubt," [7] we nevertheless hold that character evidence does not bind the trier of fact unless it creates a reasonable doubt in his mind. It is clear from the

4. See Wheeler v. United States, 93 U.S. App.D.C. 159, 211 F.2d 19, certiorari denied, 347 U.S. 1019, 74 S.Ct. 876, 98 L.Ed. 1140; Beausoliel v. United States, 71 App.D.C. 111, 107 F.2d 292; In re Lewis, D.C.Mun.App., 88 A.2d 582; 6 Wigmore, Evidence § 1750 (3rd ed. 1940).

5. See, e. g., Cooper v. United States, 94 U.S.App.D.C. 343, 218 F.2d 39; Kelly v. United States, 90 U.S.App.D.C. 125, 194 F.2d 150; Hammond v. United States, 75 U.S.App.D.C. 397, 127 F.2d 752; Sleight v. United States, 65 App. D.C. 203, 82 F.2d 459.

6. See Curley v. United States, 81 U.S. App.D.C. 389, 160 F.2d 229, certiorari denied 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850. This case enunciated principles to guide a judge in the submission of a criminal issue to a jury. The rules laid down are just as applicable where the trier of fact is the judge himself.

7. Edgington v. United States, 164 U.S. 361, 366, 17 S.Ct. 72, 74, 41 L.Ed. 467.

trial judge's statement that he considered the character evidence as well as the psychiatric testimony, which also was not binding on him, and still had "no reasonable doubt as to the guilt of the accused."

Affirmed.