Victor **TEASLEY**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 03–CF–1207.

District of Columbia Court of Appeals.

Argued March 14, 2006.

Decided May 25, 2006.

David Norman, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief for appellant.

Renata K. Cooper, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney, and John R. Fisher, Assistant United States Attorney at the time the brief was filed, David B. Goodhand, and Matthew P. Cohen, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ and KRAMER, Associate Judges, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

A grand jury indicted appellant, Victor Teasley, on one count of armed carjacking, in violation of D.C.Code § 22–2803(b); two counts of possession of a firearm during a crime of violence or dangerous offense, in violation of D.C.Code § 22–4504(b); one count of armed robbery, in violation of D.C.Code §§ 22–2801, –4502; one count of first degree theft, in violation of D.C.Code §§ 22–3211, –3212; and one count of unauthorized use of a motor vehicle, in violation of D.C.Code § 22–3215. Following a trial, a jury convicted appellant of first-degree theft and acquitted him of all other charges. He appeals his conviction and contends the trial court committed reversible error when it admitted, as excited utterances, hearsay statements made by the complaining witness during two telephone conversations. Finding no error, we affirm.

## I.

At some time between 4:00 and 4:30 p.m. on March 31, 2003, the complaining witness, Richard Killett, was on his way to pick up his children at their grandmother's house. As he drove his sports utility vehicle on Chillum Place, in the District of Columbia, he saw appellant. Recognizing appellant as the younger brother of an old friend, complainant stopped his vehicle and started a conversation. Appellant asked complainant for a ride "around the corner." Appellant then asked the complainant to pull the vehicle over. When complainant complied with this request, appellant produced a chrome-colored handgun and pointed it at the complaining witness. Employing profanity, appellant

ordered the complaining witness out of the vehicle. Before complainant exited the vehicle, appellant took cash from his wallet and threw the wallet at complainant.

Appellant drove off in the direction of Fort Totten, leaving complainant stranded on the street. The complainant immediately dialed 911 on his cellular phone and described the incident to the police operator. After he hung up, he called his children's grandmother, and informed her that he could not pick up the children as planned, because his car had been forcibly taken from him.

At approximately 4:30 p.m., District of Columbia Metropolitan Police Department ("MPD") officers received a radio communication concerning the carjacking. The broadcast to police officers described the stolen vehicle and provided its license plate number. An officer observed the stolen vehicle in front of a fast-food restaurant and followed it in his own vehicle. When the suspect drove the vehicle onto a median, the officer activated his vehicle's lights and siren. The driver of the suspect vehicle pulled over and remained inside the vehicle. A passenger exited the vehicle and fled on foot. MPD officers later found the passenger hiding inside of a garbage receptacle and arrested him. When asked his name, the passenger responded, "Fahem Robinson." However, he was later identified as appellant, Victor Teasley. During a "show-up" identification, the complaining witness identified appellant as the man who accosted him and took his money and vehicle. The police did not recover a gun, either from appellant's person or from the area in which the chase ensued.

## II.

In this appeal, appellant's arguments are focused upon the trial judge's decision to admit the contents of the telephone calls the complaining witness made shortly after the encounter involving the two men. The government filed a motion in limine to admit statements made by the complainant shortly after the incident. At a pretrial hearing, the government offered an audiotape recording of the complainant's call to the 911 dispatcher. The complainant informed the police operator that he had been carjacked at gunpoint, and that the perpetrator drove away toward Fort Totten. He exclaimed, "I think I know the guy who did it." When the operator inquired regarding complainant's location at the time of the incident, he replied, "In the car. I was talking to the guy." He explained, "I knew him ... he was an old friend of mine and he just told me 'get out,' and he took my car." The complainant identified the perpetrator only as "Victor," stating that he did not know Victor's last name. He stated that he did not know where Victor lived. At one point, he muttered, apparently to himself, "I know I shouldn't have did that." He also provided a description of the car to the dispatcher. When initially attempting to recite the license plate number, he faltered. Eventually, he provided the operator with a license number. At the end of the conversation, the operator asked the complaining witness if he was injured. He replied, "Nah. Just scared as hell."

After listening to the tape, the judge ruled that complainant's statements were admissible as excited utterances. The judge noted, "[N]ot only does [Complainant] talk in excited tone [sic], but you hear him mumbling to himself. He is asked a question about what his tag number is, and he doesn't have the wherewithal at the moment to get the tag number, and he has to look through something to give the tag number. He is not immediately responsive to the questions that are asked, and I believe that's based on his agitated state."

When defense counsel objected to the court's findings, the judge—after some further discussion with counsel—adhered to her ruling.

At a second pretrial hearing, the trial judge considered the admissibility of the contents of the complainant's call to his children's grandmother, Subelyer Jenkins.[1] Ms. Jenkins related that, on the afternoon of March 31, 2003, she was in her kitchen cooking, when she received the complainant's call. At that time, she was expecting him to arrive at her house and pick up his children. He informed Ms. Jenkins that he could not pick up the children, because he had been carjacked. According to Ms. Jenkins, he stated "that he was giving a guy a ride and, and he said he knew the guy ... and he said that he pointed a gun at him and told him to get out of his own [damn] car." Ms. Jenkins testified that the complainant "sounded excited" and spoke "very fast." His use of profanity surprised Ms. Jenkins, because he normally avoided the use of such language when speaking to her. Ms. Jenkins admitted that she was uncertain about the exact time at which complainant called. However, she maintained that she knew it was after 4:00 p.m., because she normally watched certain television shows around that time.

Over objection, the judge also ruled that complainant's statements to Ms. Jenkins were admissible as excited utterances. The judge stated that she was "satisfied that [complainant's statements] had the indicia of reliability" necessary to qualify them as excited utterances because complainant "used profanity, when he does not ordinarily use that," and Ms. Jenkins contended that he spoke quickly and "described his tone as excited, angry [and] upset." At trial, Ms. Jenkins testified to the contents of the telephone call.[2]

## III.

We are not persuaded that the trial court erred when it found that the contents of the two telephone calls were admissible under the excited utterance exception to the hearsay rule. "The admissibility of an excited utterance 'is committed to the sound discretion of the trial court. We will reverse on appeal only if a ruling is clearly erroneous.'" *Bryant v. United States*, 859 A.2d 1093, 1106 (D.C.2004) (quoting *Reyes–Contreras v. United States*, 719 A.2d 503, 505–506 (D.C.1998)). *See also Portillo v. United States*, 710 A.2d 883, 885 (D.C.1998) ("[O]ur scope of review is to consider the exercise of discretion by the trial judge, informed by the strictures of the excited utterance concept.") (citation omitted).

A trial court may admit a statement as an excited utterance if a party presenting the statement establishes the existence of the following three elements: "(1) a startling event which causes a state of nervous excitement or physical shock in the declarant; (2) a declaration made within a sufficiently short period of time after the occurrence to ensure that the declarant did not reflect upon the event and possibly invent a statement; and (3) cir-

1. Ms. Jenkins' daughter is the children's mother.

2. In addition to Ms. Jenkins and the complaining witness, the government presented the following witnesses at trial: Officer James Lucas, who pursued the stolen vehicle; Officer Elliott Pazornick, who obtained latent fingerprints and other evidence from the stolen vehicle; fingerprint specialist Diane Downing, who matched latent fingerprints taken from the vehicle with appellant's fingerprints; Officer William Weeks, who participated in appellant's arrest; and Detective Felicia Jackson, who conducted the "show-up" procedure by which complainant identified appellant.

cumstances which in their totality suggest spontaneity and sincerity of the remark." *United States v. Woodfolk,* 656 A.2d 1145, 1150 (D.C.1995) (citing *Price v. United States,* 545 A.2d 1219, 1226 (D.C.1988)). However, "the ultimate question is whether the statement, as reported at trial, was a spontaneous reaction to the exciting event, rather than the result of reflective thought." *Randolph v. United States,* 882 A.2d 210, 217 (D.C.2005) (citation and internal punctuation omitted). "If the declaration is 'a calm narrative of a past event, it loses the character of a spontaneous utterance.'" *Walker v. United States,* 630 A.2d 658, 666 (D.C.1993) (quoting *Alston v. United States,* 462 A.2d 1122, 1127 (D.C. 1983)).

Appellant does not seriously contest that a startling event occurred or that the challenged statements were made within a reasonably short time after appellant's encounter with the complaining witness. Rather, appellant posits error on the basis of the content of the statements, viewed in the context of the surrounding circumstances. More specifically, appellant urges that a review of both of complainant's statements—made to the police and to his children's grandmother—were largely deliberative and reflective in nature and thus not excited utterances. Illustrative of

this point, appellant notes that complainant initially said that he *thought* that he knew his assailant but later revised his report to describe appellant as an old friend. In appellant's view, this part of the conversation reveals deliberative thought. Similarly, in the second call, appellant points out, as another example, that complainant's call to explain his delay in coming for his children was more likely the product of reflective thought and not spontaneous.

Without repeating each instance relied upon by appellant in each of the communications made by the complainant in the separate telephone calls, we think the challenge in both instances is virtually the same. At bottom, appellant urges that because some passages of the communications emanating from complainant can reasonably be perceived as reflective or deliberative, it follows that they should be excluded as admissible excited utterances. *See United States v. Knife,* 592 F.2d 472, 481 (8th Cir.1979).

█ However, the trial court based its conclusions on factual findings that were amply supported by evidence from the record. The judge found that there was a startling event, closely followed by statements made under the excitement of the event.[3] The judge also found that, during

---

**3.** The complainant clearly placed both telephone calls within a reasonably short period of time after the carjacking. At trial, the complainant testified that he picked appellant up at some time between 4:00 and 4:30 p.m. When he called the 911 dispatcher, he asserted that he had "just" been carjacked. The police officers who responded to the scene, moreover, received a radio call concerning the carjacking at approximately 4:30 p.m. Although Ms. Jenkins could not pinpoint the exact time at which the complainant called her, her testimony suggests that complainant placed the call within the same general time frame as the 911 call and, at most, a half-hour after the carjacking incident. In this context, a half-hour constitutes "a reasonably short

period of time." *See Reyes–Contreras, supra,* 719 A.2d at 506 (statements made within half-hour of serious occurrence made in reasonably short period of time); *Alston, supra,* 462 A.2d at 1127 (statements made within hour of serious occurrence made in reasonably short period of time); *Young v. United States,* 391 A.2d 248, 250 (D.C.1978) (statements made almost an hour after serious occurrence made in reasonably short period of time).

In any event, "time alone is not controlling in determining the spontaneity of an exclamation." *Bandoni v. United States,* 171 A.2d 748, 750 (D.C.1961) (citations omitted). *See also Bryant v. United States,* 859 A.2d 1093, 1107 (D.C.2004) ("This court has consistently

the call to 911, the complainant spoke in an "excited tone," mumbled to himself, and didn't "have the wherewithal" to provide his license plate number, which supports the court's conclusion that the complainant was in a state of nervous excitement when he called 911.[4] Similarly, the conclusion that the complainant *remained* in a state of nervous excitement when he called Ms. Jenkins is supported by Ms. Jenkins's testimony about the excited tone of his voice, the speed with which he spoke and his uncharacteristic use of profanity.[5]

Appellant's contentions, more likely, go to the weight of the evidence, and are—quite properly—an advocate's alternative view of the question. "[W]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Wolf v. District of Columbia*, 597 A.2d 1303, 1308 (D.C.1991) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985)). We conclude that the trial court did not err in ruling to admit the contents of the two telephone calls under the excited utterance exception to the hearsay rule.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

*So ordered.*

---

held ... that 'a lapse of time, while a relevant factor, is not dispositive on the question of admissibility.'"). The record contains no evidence that the passage of time, however long it may have been, afforded the complainant the opportunity to regain his composure before calling Ms. Jenkins. *See Williams v. United States*, 859 A.2d 130, 140 (D.C.2004) (admitting statement as excited utterance although evidence imprecise as to exact time statement made because declarant still reasonably under stress of assault).

4. That the complainant made many of his statements in response to questions from the 911 operator does not preclude the possibility that the statements were excited utterances. *See Woodfolk, supra*, 656 A.2d at 1151. *See also United States v. Joy*, 192 F.3d 761, 767 (7th Cir.1999) ("[T]he fact that declarations were responses to questions did not destroy their 'spontaneity.'")(citation omitted).

5. In *Smith v. United States*, 666 A.2d 1216, 1223–24 (D.C.1995), we held that a trial court did not err in finding that a declarant remained in a state of nervous excitement when the declarant called 911, despite evidence establishing that, between the time of the robbery that caused the nervous excitement and the time of the call, he "took a circuitous route home" to avoid his assailants and discussed calling 911 with his mother. Here, the complainant's behavior conveyed considerably less deliberation than that exhibited by the declarant's conduct in *Smith*. *See also United States v. Joy*, 192 F.3d 761, 766 (7th Cir.1999) ("[A] court need not find that the declarant was completely incapable of deliberative thought at the time he uttered the declaration.").