**Erlis REYES & Victor Blanco, Appellants,**

v.

**UNITED STATES, Appellee.**

**Nos. 04–CF–198 & 04–CF–218.**

District of Columbia Court of Appeals.

Argued Oct. 11, 2006.

Decided Aug. 16, 2007.

---

Winsome G. Gayle, Public Defender Service, with whom James Klein and Shilpa S. Satoskar, Public Defender Service, were on the brief, Washington, D.C., for appellant Blanco.

Joseph A. Virgilio was on the brief for appellant Reyes.

Chrisellen R. Kolb, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the brief was filed, and Roy W. McLeese III, Lisa H. Schertler, and Diane G. Lucas, Assistant United States Attorneys, were on the brief, for appellee.

Before WASHINGTON, Chief Judge, and KRAMER and THOMPSON, Associate Judges.

WASHINGTON, Chief Judge.

Appellants Erlis Reyes and Victor Blanco ("appellants") appeal from their convictions for armed robbery, in violation of D.C.Code §§ 22–2801 & 22–4502, and unauthorized use of a vehicle ("UUV"), in violation of D.C.Code § 22–3215.[1] Both appellants contend on appeal that the trial court erred in permitting a police officer to

---

**1.** Appellants were also indicted for kidnaping, in violation of D.C.Code § 22–2001, but were subsequently acquitted on December 9, 2003.

testify as to statements made by the complaining witness. Appellant Erlis Reyes ("Reyes") further claims that: 1) his Sixth Amendment right to confront witnesses was violated; 2) he was denied due process, in violation of *Brady*;[2] and 3) the trial court erred in denying his motion to sever counts. Finding no error, we affirm.

## I.

On the night of May 28, 2003, the complainant Joseph Coe ("complainant" or "Coe") had mechanical problems with his van, which broke down around Georgia and Sherman Avenues. After securing assistance to repair his van, Coe walked to a nearby gas station on the southwest corner of Sherman Avenue to buy a pack of cigarettes and to get change for a ten dollar bill. The gas station attendant, however, would not make change for Coe. According to Coe's testimony at trial, he then asked a "Spanish guy," who was later identified as appellant Reyes, if he had change for a ten dollar bill; Reyes said he did not. Coe noticed that Reyes was going to pump six dollars worth of gas in his car, and asked Reyes if he would give him the six dollars in exchange for Coe's ten dollar bill, and give the four dollars Reyes would receive in change back to Coe. Reyes agreed and Coe gave him the ten dollar bill.

Reyes, however, did not return the four dollars in change to Coe, but instead pumped ten dollars worth of gas into his car, which was described as a champagne-colored Honda. Coe then approached Reyes and asked him to return his four dollars. Reyes responded that he did not have the money, and instructed Coe to ask his friend sitting in the backseat of the Honda, who was later identified as appellant Victor Blanco ("Blanco"), for the change. Coe testified that when he approached the car, Reyes pushed him from behind and into the backseat of the car. According to Coe, Blanco kept him in the backseat by holding a blade to his throat while Reyes drove away from the gas station. Blanco then demanded Coe's money which Coe pulled out and handed to him.

Coe then noticed that Reyes was driving in an area without lights and began to panic because he did not know what was going to happen next. In his panic, Coe struggled to get the knife away from his neck, and in the process Coe's right index finger was cut "all the way to the bone." Reyes then stopped the vehicle in front of Cardozo High School, and went into Coe's pocket while Coe was still "tussling" with Blanco. At some point during the incident, Reyes and Blanco took Coe's wedding band, gold chain, pager, and his money. Coe testified he was holding Blanco's hand because he did not want to be stabbed in any "vital point of [his] body." Reyes and Blanco then told Coe to get out of the car. As they drove away, Coe was able to see the license plate number of the car. Coe then ran towards the Garfield Terrace Apartment Complex, located at 2301 11th Street, Northwest.

Officer Bradford Brooks, of the D.C. Housing Authority Police Department, was on duty at the Garfield Terrace Apartment Complex the night of May 28, 2003. According to Officer Brooks, Coe ran through the door holding his hand, which was bleeding. Coe was also sweating, appeared highly upset and scared, and was rambling several things at once in a loud voice. Officer Brooks testified that he attempted to calm Coe down to find out what happened. According to Officer Brooks, Coe told him that he had just been robbed, kidnaped, and that somebody tried to cut his neck. Officer Brooks called for assistance to tend to Coe's bleeding hand and

---

**2.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

relayed to the radio dispatcher the description of the vehicle, the license plate number, and description of the assailants given by Coe.

Officer Christopher Dove and his partner, of the Metropolitan Police Department, were dispatched to Coe's location and arrived at the apartment complex approximately five to ten minutes after the call to the dispatcher. Officer Dove testified that when he first came into contact with Coe, he was very upset, talking rapidly, and scared. In addition, Officer Dove testified that Coe was bleeding profusely and was in significant pain. Coe then repeated the information he had given to Officer Brooks minutes earlier and also stated that the assailants had taken somewhere between $150–$200 from him. Although Coe could not recall the denominations of bills taken from him at trial, Officer Dove testified that Coe stated the denominations included two fifty dollar bills, and some smaller bills.

Officer Dove further testified that after an Emergency Medical Technician ("EMT") had tended to Coe's hand, he and his partner took Coe to Sherman Avenue in their patrol vehicle. Although Coe was in need of further medical attention, Coe asked the officers if they would take him to his van because he could not find his keys and was worried that his assailants might also steal his vehicle. As the patrol car approached the intersection of Sherman Avenue and Harvard Street, Coe began to shout, "That's them! That's them, getting into the car!" Coe was pointing to and identifying two Hispanic males, standing in front of a champagne-colored Hon-

da, a car that matched the description of the car driven by his assailants.

As Officer Dove approached the Honda, he observed both men quickly enter the car. Officer Dove also noticed that the ignition was "punched"[3] and ordered Reyes and Blanco out of the car. Officer Dove testified that both appellants had blood on their clothing although neither appeared to be injured. Blanco asked Officer Dove, "what was going on," and Officer Dove replied that they were driving a stolen car. Blanco then repeated, "the car is stolen."[4]

The officers ordered appellants to sit down on the sidewalk and Coe identified Reyes as the individual who pushed him into the car, and Blanco as the assailant who held a knife to his neck.[5] Pursuant to appellants' arrest, the officers searched both appellants and recovered a fifty dollar bill from each, which Officer Dove testified matched the description Coe had given earlier in the evening regarding the denominations of bills stolen from him. Officer Dove also stated that he found a gold wedding band on the street, at the spot where appellant Blanco was standing just before he entered the car. The record also indicates that the police submitted the appellants' clothing to the FBI laboratory for DNA analysis. The DNA analysis revealed that both appellants' shirts were stained with Coe's blood.

## II.

### Spontaneous Utterance

■ On appeal, appellants argue that the trial court erred in admitting the state-

---

**3.** As explained at trial, "punched" is a term that is used to describe an ignition that is completely removed from the car so that it can be driven without a key. It was further explained that a missing ignition is an indicator that the vehicle is likely stolen.

The vehicle's owner was later identified as Mr. Juan Zuniga.

**4.** Officer Dove testified at trial that he understood Blanco's response to be a statement rather than a question.

**5.** At trial, however, Coe was unable to identify either appellant as the assailants.

ments Coe made to Officer Dove following the robbery and alleged kidnaping under the excited utterance exception. It is well-established that a statement is admissible under the spontaneous utterance exception to the hearsay rule where the party offering the statement establishes: 1) the presence of a startling event which caused a state of nervous excitement or physical shock; 2) that the declaration was made within a reasonably short period of time after the occurrence to ensure that the defendant did not reflect upon the event; and 3) the presence of circumstances, which in their totality suggest spontaneity and sincerity of the statement. *See Smith v. United States*, 666 A.2d 1216, 1222 (D.C. 1995) (quoting *Nicholson v. United States*, 368 A.2d 561, 564 (D.C.1977)).[6] "Whether a statement constitutes a spontaneous utterance depends upon the particular facts of each case, and its admissibility as such is committed to the sound discretion of the court." *Id.* (citations omitted). The decisive factor in determining the admissibility of the statement "is whether the statement, as reported at trial, was a spontaneous reaction to [an] exciting event[,] rather than the result of reflective thought." *Randolph v. United States*, 882 A.2d 210,

217 (D.C.2005) (quoting *Lyons v. United States*, 622 A.2d 34, 47 (D.C.1993)).

Although the trial court failed to make specific findings of facts, the record amply supports the trial court's decision to admit Coe's statements to Officer Dove under the excited utterance exception. According to the trial testimony, Coe's statements to Officer Dove were made within minutes of being robbed. *See Alston v. United States*, 462 A.2d 1122, 1127 (D.C.1983) (the fact that a declaration is made within a reasonably short period of time after the occurrence, although not determinative, is of great significance because it assures that the declarant has not reflected or premeditated or constructed the statement). In addition, both Officer Brooks and Officer Dove testified that Coe was very upset, highly agitated, scared and talking rapidly when he made the statements. Specifically, Officer Brooks testified that upon entering the apartment building, Coe was rambling off several things at once in a very agitated tone of voice.[7] Officer Dove testified that when he first saw Coe, he was in obvious pain due to the knife wound that almost severed his finger. He also testified that the injury continued to bleed profusely while Coe spoke with him. While the record reflects

6. Seemingly, appellants also contend the trial court should have considered Coe's testimony and demeanor at trial when determining whether Coe's statements to Officer Dove fell within the spontaneous utterance exception. We disagree. We have held that the trial court should focus on the circumstances ascertainable upon utterance of the statement, not on other circumstances that might become known at trial or hearing. *Doret v. United States*, 765 A.2d 47, 57 (D.C.2000) (superseded in part by *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004) ("To be admissible under the Confrontation Clause, hearsay evidence used to convict a defendant must possess the indicia of reliability by virtue of its inherent trustworthiness, *not by reference to other evidence at trial.* ... Thus, we must look to the state-

ment itself and to the circumstances of its delivery for evidence of its inherent reliability.") (emphasis added)).

7. Appellants argue that this case is factually substantially similar to *Odemns v. United States*, 901 A.2d 770 (D.C.2006). In *Odemns*, we held that the statements of a complainant were not admissible as excited utterances because there was insufficient indicia of reliability. *Id.* at 779. Unlike in *Odemns*, however, the complainant in this case was the victim of a violent robbery that resulted in his sustaining a significant injury causing profuse and prolonged bleeding and significant pain which enhanced the statements' reliability. Thus, we find that *Odemns* is factually distinguishable from this case.

that Coe was calmer by the time emergency personnel arrived, Officer Brooks testified that Coe remained in a nervous and frantic state even after his finger had been tended to, primarily because he could not find his van keys and he was worried that his assailants might also take his van. In light of this evidence, we are satisfied that any statements made by Coe to Officer Dove immediately after escaping from the appellants were sufficiently reliable to justify their admission as excited utterances. *See Welch v. United States,* 689 A.2d 1, 4 (D.C.1996) (affirming the trial court's admission of declarant's statements under the excited utterance exception where the record demonstrated that the declarant was emotional throughout her interview and appeared to narrate without thinking of what to say).

■ Despite the foregoing evidence of reliability appellants argue that Coe's statements should not have been admitted because the statements were made in response to Officer Dove's questions and were too detailed to qualify as spontaneous utterances. "We have held, depending on the circumstances, that a witness' response to police questioning may or may not qualify for admission as an excited utterance." *Jones v. United States,* 829 A.2d 464, 468 (D.C.2003) (Schwelb, J., concurring) (citing *Portillo v. United States,* 710 A.2d 883, 884–85 (D.C.1998)). The key inquiry is "whether the interview conducted was 'more deliberative in nature than spontaneous.'" *Jones, supra,* 829 A.2d at 468–69 (quoting *Portillo, supra,* 710 A.2d at 885). For example, in *Portillo* we found that the declarant's responses to the interviewing officer's questions were not spontaneous because the nature of the questions required deliberative and thoughtful answers. *Portillo, supra,* 710 A.2d at 885. In contrast, we have found that responses to preliminary investigative questions,

made while the declarant is still under the spell of the startling event, may qualify as spontaneous utterances because the questions are asked to ascertain the nature of the emergency and do not provide an opportunity for the declarant to reflect on the event or to premeditate a response. *See, e.g., Nicholson, supra,* 368 A.2d at 564–65 (concluding that declarant's response to "what in the world happened," asked minutes after the declarant was stabbed, was admissible under the spontaneous utterance exception). In this case, the officers asked Coe "what happened" in order to ascertain how he became injured and bleeding. In response, Coe related to the officers the events of the incident without further questions from the officers. Under these circumstances, we have no difficulty finding that the types of questions asked by the officers to Coe did not require Coe to deliberate or premeditate his answers; therefore, we reject appellants' argument.

With respect to appellants' second contention that Coe's statements were too detailed to qualify as excited utterances, we are unaware of any support for appellants' claim that detailed statements can never qualify as spontaneous utterances. To the contrary, this court has affirmed the admission of rather detailed statements under the excited utterance exception in prior cases. For example, in *Welch, supra,* we affirmed the trial court's decision to allow statements made by the declarant that "described the men and their car in detail." *Welch, supra,* 689 A.2d at 2. Similarly, in *Teasley v. United States,* 899 A.2d 124, 126 (D.C.2006), the declarant in two separate phone calls was able to give detailed descriptions of his carjacker, the circumstances of the carjacking, and a complete description of his car. *See also Konvalinka v. United States,* 162 A.2d 778, 782 (D.C.1960) ("[F]inally, the fact that [the complaining witness] detailed what he

meant by 'nasty things' in response to the officer's questions is of no moment."). In response to a similar argument made in *Teasley*, we pointed out that appellants' contentions "more likely[ ] go to the weight of the evidence, and are—quite properly— an advocate's alternative view of the question," but do not undermine the trial court's determination that the statements were spontaneous and not the product of reflection. *Teasley*, 899 A.2d at 129. Because we are satisfied that the trial court correctly evaluated the reliability of the statements by Coe, we conclude that the trial court did not abuse its discretion when it admitted Coe's statements, through the testimony of Officer Dove, under the excited utterance exception to the hearsay rule.

Alternatively, appellants argue that the narrative form in which Officer Dove was permitted to testify went beyond the scope of the excited utterance exception. For this proposition, appellants rely on our opinion in *Lyons v. United States*, 622 A.2d 34 (D.C.1993), *vacated on other grounds, reh'g granted en banc*, 635 A.2d 902 (D.C.1993).[8] In *Lyons*, we held that the trial court erred in permitting a police officer to testify to statements made by an eyewitness in a "detailed blow-by-blow chronological narrative" because "the officer's testimony [was] in fact his own account of what [the witness] told him during a lengthy police interview." *Id.* at 47. Accordingly, we held that "[a]lthough the exception allows the police to repeat discrete statements by an eyewitness, it does not permit the police to state on the stand what is, in effect, an *independent account* of the declarant's testimony at trial." *Id.* at 39–40 (emphasis added). Unlike in *Lyons*, however, Officer Dove's testimony was not his own reconstructed account of Coe's statements, but was merely his recollection of discrete statements told to him by Coe within minutes of the robbery. Therefore, our decision in *Lyons* is not controlling in this case.

■ Perhaps the most important distinction between this case and *Lyons* is that the officer in *Lyons* testified about his personal impressions of what the eyewitness had told him. Statements such as: "apparently, [the eyewitness and decedent] were in junior high together, something of that nature," and "the decedent had apparently seen the subject" made it clear that his testimony included more than statements made by the eyewitness. In comparison, nothing in Officer Dove's testimony suggests that he interjected his own inferences or viewpoints into the statements he attributed to Coe. Appellants argue that Officer Dove's lack of memory as to the exact words used by Coe on the night of the incident is an indication that Officer Dove's testimony at trial was nothing more than the officer's own recollection of the conversation he had with Coe. While appellant's argument is not meritless in the abstract, after reviewing the entire transcript we are satisfied that Officer Dove's substitution of a few inconsequential words for words used by Coe on the night of the incident does not make his testimony about Coe's statements on the night of the incident unreliable.[9] There-

---

**8.** While the opinion in *Lyons* has been vacated, this court has not repudiated the analysis undertaken in that case in any subsequent opinion. Therefore, for purposes of this case, we will undertake our analysis based on the court's rationale in *Lyons*.

**9.** Specifically, Officer Dove testified that Coe told him "he was approached by two *Hispanic males*" and that "he was robbed of *U.S. currency.*" When questioned by the trial court, Officer Dove stated that those words were not Coe's exact words and that he could not remember the exact terminology used by Coe on the night of the incident. We are

fore, for the foregoing reasons, we reject the appellants' argument that the trial court erred when it admitted Officer Dove's testimony of Coe's statements under the excited utterance exception.[10]

### Confrontation Clause

■ Reyes separately argues that the admission of Officer Dove's testimony violated his Sixth Amendment right to confront witnesses. Specifically, Reyes claims that although Coe was physically present at trial, he was essentially unavailable for cross-examination because he lacked sufficient memory. Because counsel failed to object at trial to the admission of Officer Dove's statement on constitutional grounds, and objected purely on evidentiary grounds, we review appellant's claim of constitutional violation for plain error. See Carey v. United States, 647 A.2d 56, 58

n. 2 (D.C.1994). Plain error review requires the appellant to show the objectionable action: 1) was error; 2) that was plain; 3) that affected substantial rights; and 4) that seriously affected the fairness, integrity or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 732–36, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

■ We conclude that the trial court did not err, let alone plainly err, in this case because "when a declarant appears for cross-examination at trial, the Confrontation Clause places no constraints ... on the use of his prior testimonial statements." Crawford v. United States, 541 U.S. 36, 58 n. 9, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). It is well-settled that even where the witness has no memory of the prior identification or statement that is the subject of cross-examination, the wit-

---

satisfied that these minor deviations, standing alone, do not render the statements testified to by Officer Dove unreliable or inadmissible. Cf., Konvalinka, supra, 162 A.2d at 779–80 (this court did not find an officer's testimony objectionable merely because the officer substituted his own words for those used by the young complainant).

10. Because we are satisfied that the trial court did not err in admitting Officer Dove's testimony under the spontaneous utterance exception, we need not address the government's alternative argument that significant portion's of Coe's statements to Officer Doe were admissible under the prior identification exception to the hearsay rule. See Brown v. United States, 840 A.2d 82, 89 (D.C.2004).

Moreover, because most of Officer Dove's testimony was cumulative of Coe's own testimony, as well as the testimony of Officer Brooks, neither of which appellants claim were improperly admitted, we are satisfied that even if the trial court erred in admitting Officer Dove's testimony regarding Coe's statements, the error did not substantially affect or influence the jury's verdict. The only testimony given by Officer Dove which was not cumulative regarded the denominations of the bills Coe stated were taken from him.

While appellants contend the denominations of the bills were the key link between them and Coe, we believe that the blood found on appellants' clothing and vehicle matching Coe's blood, and Coe's wedding ring found at the spot where appellant Blanco was apprehended, among other things, provided much stronger evidence linking appellants to Coe. Based on the foregoing, we find that even if the trial court erred in permitting Officer Dove's testimony, any such error "would not have had a substantial or injurious effect or influence in determining the jury's verdict" and, thus, does not warrant reversal. Taylor v. United States, 866 A.2d 817, 823 (D.C.2005) (quoting Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946)).

Appellants alternatively argue that the cumulative nature of Officer Dove's testimony was prejudicial because it improperly bolstered the credibility of Coe. We need not reach that issue in this case, however, because it is only in cases where we have determined that the trial court erred in admitting testimony that we have addressed the prejudicial impact, see Porter v. United States, 826 A.2d 398, 410 (D.C.2003); Daye v. United States, 733 A.2d 321, 327 (D.C.1999), which is the purpose for which appellants offer this argument.

ness is nevertheless available for trial. *See United States v. Owens*, 484 U.S. 554, 559–60, 108 S.Ct. 838, 98 L.Ed.2d 951 (1988). In this case, because Coe testified at trial and was available, Reyes' Sixth Amendment right to confront witnesses was not infringed.

### Brady Violation

 Reyes also claims he was denied due process, in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), because the government failed to disclose the identity of the gas station cashier who, appellant argues, would have impeached the credibility of the complaining witness. Under *Brady, supra*, the government is required to disclose to the defendant evidence in its *possession* that is both favorable and material to the case in sufficient time for it to be used at trial. *Id.* at 87, 83 S.Ct. 1194. Hence, it is axiomatic that "[i]f the government does not possess the requested information, there can be no *Brady* violation." *Guest v. United States*, 867 A.2d 208, 212 (D.C.2005) (citing *Velasquez v. United States*, 801 A.2d 72, 81 (D.C.2002)).

 In this case, police investigators interviewed a cashier who was working at the gas station on the night of the incident. The cashier told the investigators that he did not recall seeing Coe on the night of the incident. Because the cashier could not provide any material evidence for the investigation, the investigators did not further interview the cashier nor collect from him any identification information. Appellants contend that the investigators' failure to collect the identifying information amounted to a *Brady* violation. Contrary to appellant's argument, however, this court has previously rejected the contention that *Brady* implies a "duty to investigate—and come to know-information which the defendant would like to have but

the government does not possess." *Guest, supra* 867 A.2d at 212 (quoting *Lewis v. United States*, 393 A.2d 109, 115 (D.C. 1978)). Therefore, because the government did not have in its possession the information Reyes contends is *Brady* material, and *Brady* imposes no duty upon police officers to investigate information that the defendant might like to have, there was no *Brady* violation in this case.

### Motion to Sever

 Finally, Reyes contends that the trial court abused its discretion in denying the motion to sever the UUV count from the kidnaping and robbery counts. The decision to sever charges under Super. Ct.Crim. R. 14 is committed to the sound discretion of the court. *Wright v. United States*, 570 A.2d 731, 734 n. 8 (D.C. 1990). This court has held that a trial court does not abuse its discretion in denying a motion to sever where the evidence as to each offense is sufficiently simple and distinct, and there is little risk that the jury would amalgamate the evidence unfairly. *Bell v. United States*, 332 A.2d 351, 353 (D.C.1975). This court will reverse a trial court's denial of a motion to sever only upon a showing of the most compelling prejudice. *Void v. United States*, 631 A.2d 374, 379 (D.C.1993).

In this case, the only evidence that the prosecutor presented regarding the UUV count was the testimony of the stolen Honda's owner Mr. Zuniga, and Officer Dove. Mr. Zuniga briefly testified that his car had been stolen in April or May of 2003 and that he had not given either appellant permission to use his car. Neither defense counsel cross-examined Mr. Zuniga, or otherwise presented a defense to the UUV charge. Officer Dove testified that he immediately noticed the ignition was punched when he approached the appellants as they were standing near the car, and that ap-

pellant Blanco stated the car was stolen. Clearly, the evidence regarding the UUV offense was simple and discrete from the other evidence presented at trial. *See Gooch v. United States,* 609 A.2d 259, 265 (D.C.1992) (holding that there is no unfair risk of prejudice where the offenses are segregated in the presentation of the evidence).

Similarly, the prosecutor, in her closing argument, was careful to keep the evidence presented at trial regarding the UUV count separate from the other counts of robbery and kidnaping. The prosecutor, near the end of her closing argument, drew the jury's attention away from the other offenses, by "talk[ing] about the car itself." The prosecutor then gave separate and distinct argument on the evidence presented regarding the UUV offense. *See Cox v. United States,* 498 A.2d 231, 236–37 (D.C.1985) (holding that there is no unfair risk of prejudice where the offenses are presented distinctly and separately during opening and closing arguments). Finally, the trial judge instructed the jury that it was "to give separate consideration and return separate verdicts with respect to each count of the indictment." The jury was further instructed that a finding of guilty on one count did not necessarily require a finding of guilty on any other counts, an instruction the jury is presumed to have followed. *See Davis v. United States,* 700 A.2d 229, 232 (D.C.1997) (internal citation omitted). We find it significant to note that the jury did indeed heed the trial court's instructions as is evidenced by the jury's acquittal of both appellants on the kidnaping count. Based on the foregoing reasons, we are satisfied that there was no unfair risk of prejudice in trying the UUV count with the rest of the charges in this case, and therefore, the trial court did not abuse its discretion in denying the motion to sever counts.

For the foregoing reasons we *Affirm.*