Lydia J. CLARKE, Appellant

v.

UNITED STATES, Appellee.

No. 03–CM–327.

District of Columbia Court of Appeals.

Argued Feb. 5, 2008.

Decided Feb. 28, 2008.

Ian A. Williams, Washington, DC, for appellant.

Alice Wang, Public Defender Service, with whom James Klein, Samia Fam, Jaclyn Frankfurt, and Andrea Roth, Public Defender Service, were on the briefs, for amicus curiae on behalf of appellant.

Mary B. McCord, Assistant United States Attorney, with whom Kenneth L. Wainstein, United States Attorney at the time the original brief was filed, Jeffrey A. Taylor, United States Attorney, John R. Fisher, Assistant United States Attorney at the time the original brief was filed, and Roy W. McLeese III, Valinda Jones, Emily A. Miller, and Glen Donath, Assistant United States Attorneys, were on the brief, for appellee.

Before FARRELL and KRAMER, Associate Judges, and BELSON, Senior Judge.

FARRELL, Associate Judge:

After a bench trial, appellant was found guilty of simple assault. On appeal she contends, for the first time, that a hearsay statement by the non-testifying complainant, Marlin Thomas, to his mother was admitted into evidence in violation of *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), and *Davis v. Washington,* 547 U.S. 813, 126 S.Ct. 2266, 165 L.Ed.2d 224 (2006). We hold that the statement was not "testimonial" within the meaning of those decisions, hence that appellant has not shown error, much less plain error, *see United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123

L.Ed.2d 508 (1993), in the admission of the statement.

## I.

Maxine Thomas testified that on July 9, 2002, she heard a noise outside the house she shared with her son Marlin. Looking out the door, she saw that appellant's car had rolled into Marlin's car and that appellant and Marlin were standing nearby arguing. The pair had been romantically involved in the past and had a child together. Ms. Thomas saw appellant make a "launching" motion toward Marlin, "like she had something" in her hand, but did not see anything "moving through the air" or what the object, if any, was that appellant had thrown. As appellant quickly got into her car and drove off, Marlin ran up the steps to the house holding onto his shirt, which smelled to Ms. Thomas as if "soaked" in gasoline. "[A]cting like he was in a state of shock," he exclaimed that "she [appellant] just threw gasoline on me." Ms. Thomas told Marlin to retrieve the nozzle of the gas can (the nozzle was apparently lying in the street) "just in case . . . something comes up or whatever."

Marlin Thomas did not testify, and his hearsay statement was admitted into evidence without objection. In contrast to the statement and Ms. Thomas's testimony of seeing the "launching" movement, appellant denied having thrown anything at Marlin, although she admitted she had driven to his house angry with him because he had not picked up their child from daycare that day.[1]

Relying in part on Marlin's statement to his mother, the trial judge disbelieved appellant's testimony and entered a finding of guilty.

## II.

As pointed out, appellant did not object to Marlin's out-of-court statement on constitutional grounds (or on hearsay grounds, for that matter), and therefore must show plain error. *See, e.g., Long v. United States,* 940 A.2d 87, 91, 2007 D.C.App. Lexis 667, *6 (D.C.2007). Appellant and *amicus curiae* argue that, since objection would have been "futile" at trial under then-prevailing (*i.e.,* pre-*Crawford*) law in this jurisdiction, the issue should be deemed preserved. However, we rejected that argument expressly or implicitly in *Long, supra,* and *Thomas v. United States,* 914 A.2d 1 (D.C.2006), both in reliance on *Johnson v. United States,* 520 U.S. 461, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997). In each decision, we dealt with *Crawford* error that had not been objected to on constitutional grounds, but "where the law at the time of trial was settled [in favor of admission of the disputed evidence] and clearly contrary to the law at the time of appeal," *Id.* at 468, 117 S.Ct. 1544. We followed *Johnson's* teaching by conducting plain error analysis qualified by the rule that, in this context, the "plain[ness]" of any error is determined as of "the time of appellate consideration." *Id.; see also Thomas,* 914 A.2d at 20; *Long,* 940 A.2d at 91, 2007 D.C.App. Lexis at *6. *Amicus's* endeavor to convince us that "futility" was not squarely argued or considered in either of our cited cases is unavailing. Both applied the special rule of *Johnson,* as we have said, and *Johnson* dealt expressly with the situation where controlling law foreclosed a given claim of error at the time of trial. We accordingly apply plain error analysis in this case as well.

---

1. Appellant asserted that Marlin, on her arrival, had thrown a cup of urine at her and forced his way into her car, causing it to roll into his car. The presence of gasoline on his clothes, she said, came from his job as "a mechanic type person."

Under that standard of review, it is not strictly necessary for us to decide whether the admission of Marlin's statement was "error," *see Olano*, 507 U.S. at 733–34, 113 S.Ct. 1770, or even "obvious error" at the time of appeal, *id.* at 734, 113 S.Ct. 1770; we could instead assume error and proceed to ask whether appellant has met her additional burden of showing that the error affected her "substantial rights," *id.* at 734–35, 113 S.Ct. 1770, and, more fundamentally, " 'affect[ed] the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 736, 113 S.Ct. 1770 (citation omitted). The parties and *amicus*, however, have briefed at length, and ably, the issue of whether there was error to begin with, and we choose to decide that issue to give such guidance as we may on a novel issue in this jurisdiction.

### III.

 The question of constitutional error *vel non* under *Crawford* and *Davis* turns on whether Marlin Thomas's statement to his mother that "she [appellant] just threw gasoline on me" was testimonial. *See Davis*, 126 S.Ct. at 2273; *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354. "Only [testimonial] statements ... cause the declarant to be a 'witness' within the meaning of the Confrontation Clause." *Davis*, 126 S.Ct. at 2273. *Crawford* and *Davis* both concerned "[s]tatements taken by police officers in the course of interrogations," *Crawford*, 541 U.S. at 52, 124 S.Ct. 1354, and in that context, clarifying its holding in *Crawford* as to the meaning of "testimonial," the Court in *Davis* held:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

547 U.S. at 822, 126 S.Ct. at 2273–74.

This case, however, involves no statement made to police officers, nor one made in response to "interrogation," no matter how "colloquial[ly]" defined. *Id.* at 822, 126 S.Ct. at 2273. *Amicus* belatedly asserted at oral argument that Ms. Thomas may in fact have "questioned" her son before his statement, pointing to her testimony, "Well I'm still[,] I had questioned just what happened, so my son ran up the steps toward me...." But that testimony is ambiguous: it admits of the meaning either that Ms. Thomas had been questioning in her own mind (only) what happened or that she had put that question to her son. The absence of any objection by appellant to Marlin's utterance which she recited moments later left the matter unclarified. Moreover, on any view the statement was not "in response to *structured* ... questioning," *Crawford*, 541 U.S. at 53 n. 4, 124 S.Ct. 1354 (emphasis added). In these circumstances the statement may fairly be viewed as unsolicited.

 Consequently, the issue we decide is whether Marlin's uninvited statement to his mother that he had just had gasoline thrown on him by appellant was "testimonial," in light of the guidance the Supreme Court has given in two cases each involving police interrogation. The fact alone that a statement was made "to someone other than law enforcement personnel," *Davis*, 547 U.S. at 823 n. 2, 126 S.Ct. at 2274 n. 2, does not—so far as *Crawford* and *Davis* teach—make it nontestimonial, for the Court left that issue open in both cases. *See id.* Nevertheless, in a setting such as this one where Ms. Thomas had no

affiliation, even remote, with law enforcement and nothing in Marlin's statement suggested that he meant her somehow to convey his utterance to the police, we think the fact that she was a lay person— indeed, a family member—must weigh against a finding that it was testimonial.[2] And, when we consider the other circumstances in which the statement was made, we are certain in concluding that Marlin "was not acting as a *witness; . . .* was not *testifying,*" *id.* at 828, 126 S.Ct. at 2277 (emphasis in original), when he told his mother of the assault.

As both *Crawford* and *Davis* point out, a testimonial statement is by nature "a solemn declaration or affirmation made for the purpose of establishing or proving some fact." *Davis,* 547 U.S. at 826, 126 S.Ct. at 2276 (quoting *Crawford;* further citation and internal quotation marks and brackets omitted). These words are all significant. "[S]olemn[ity]," as well as "declaration" or "affirmation," all connote a "level of formality" in the utterance or in the setting in which it was made. *Id.*; *see also id.* at 830 n. 5, 126 S.Ct. at 2279 n. 5 ("[F]ormality is indeed essential to testimonial utterance.").[3] Further, the statement must be made to "establish[ ] or prov[e] some fact"—it must be a "purpose[ful]" or "deliberate[ ] recount[ing of] . . . how potentially criminal past events began and progressed," a "narrative of past events." *Id.* at 826, 830, 832, 126 S.Ct. at 2276, 2278, 2279. Lastly, a statement "delivered at some remove in time from the danger . . . described," rather than "show[ing] immediacy," tends to equate with "what a witness does on direct examination," *i.e.,* give "live testimony." *Id.* at 830, 831–32, 126 S.Ct. at 2278, 2279 (emphasis deleted).

None of these features of a testimonial statement fits the circumstances of Marlin's statement to his mother that he had just been doused with gasoline. He appeared to her "in a state of shock" as he reported the assault in what was much less a "narrative," a deliberate recounting, than an exclamation—a spontaneous, excited utterance made under the immediate impetus of the violent act. *As* an excited utterance it almost certainly would have been admitted in evidence as a hearsay exception, had an objection even been made to it.[4] It is no answer to say that, under *Crawford* and *Davis,* the earmarks of an excited utterance—spontaneity, lack of reflection or forethought, a reflexive response to a traumatic event—do not shield it from constitutional scrutiny when the statement was made to law enforcement personnel; in the distinctly different setting of communication to a family member, at least, those features inescapably weigh against a finding that the statement was

---

**2.** We express no view, of course, on whether a statement to a person who has no affiliation with law enforcement but is under a legal duty to report evidence of crime may be testimonial. *See, e.g., People v. Stechly,* 225 Ill.2d 246, 312 Ill.Dec. 268, 870 N.E.2d 333, 365–66 (2007).

**3.** The Court was careful to note that "[t]he solemnity of even an oral declaration of relevant past fact *to an investigating officer* is well enough established by the severe consequences that can attend a deliberate falsehood." *Davis,* 547 U.S. at 826, 126 S.Ct. at 2276 (emphasis added). *Amicus* argues that

a false accusation made even privately to a family member, because of "the prospect of a defamation suit," establishes well enough the solemnity of the utterance. That analogy stretches too far, in our view.

**4.** The trial judge, of course, made no findings as to whether the utterance qualified as excited or spontaneous, *see generally Reyes v. United States,* 933 A.2d 785, 789–90 (D.C.2007), since no challenge was made to it. Appellant nonetheless offers no sound reason why the exclamation was not a classic candidate for admissibility under that hearsay exception.

"solemn," "formal," or "purpose[ful]" enough to be testimonial.

*Amicus* argues that at most only "present-tense statements" show immediacy under *Davis*, see 547 U.S. at 831–32, 126 S.Ct. at 2279, so that, for example, the utterance "she's throwing gasoline on me!" might be admissible without confrontation (though *amicus* resists even that conclusion), but the similar words "she just threw gas on me!" would not. Even if a temporal distinction so thin as this controls admissibility of utterances to police officers, however (an issue we do not consider), nothing in *Davis* implies that it would serve to bar an exclamation to a lay auditor—here Marlin's mother—made in shocked reaction to an immediate past event. Nor is it significant that, as appellant and *amicus* correctly point out, Marlin's exclamation was not "a *casual* remark to an acquaintance," *Crawford*, 541 U.S. at 51, 124 S.Ct. 1354, or an "*off-hand* . . . remark [overheard]" by his mother, *id.* (emphases added)—illustrations by the Court of nontestimonial utterances. What Marlin reported mattered to him gravely, not least because of the danger that being "soaked" with gasoline still exposed him to. But that the utterance was serious, not "casual" or "off-hand," says little about whether it was made with the solemnity and deliberateness essential to a testimonial statement. A "declaration or affirmation made for the purpose of establishing or proving some fact," *Davis, supra,* are not words that fit an exclamation to one's mother in stunned response to a violent act.

The issue may be analyzed in another way as well, with the same result. Courts elsewhere in deciding whether a statement made to someone other than law enforcement personnel is testimonial have focused, variously, "on the reasonable expectations of a person in the declarant's position under the circumstances," *People v. Vigil*, 127 P.3d 916, 925 (Colo.2006); on whether the statement was "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial," *State v. Mechling*, 219 W.Va. 366, 633 S.E.2d 311, 321 (2006); or, similarly, on "whether the objective circumstances indicate that a reasonable person in the declarant's position would have anticipated that his statement likely would be used in prosecution." *People v. Stechly, supra* note 2, 312 Ill.Dec. 268, 870 N.E.2d at 361. *See also* Richard D. Friedman, *Grappling with the Meaning of "Testimonial,"* 71 Brook. L.Rev. 241, 259 (2005) ("To be testimony, it must appear from the perspective of the witness that the statement is transmitting information that will, to a significant probability, be used in prosecution."). Whichever of these formulas, if any, best captures the meaning of a testimonial utterance in this context,[5] we think none of them—nor any other we could reasonably devise—warrants a conclusion that Marlin's exclamation to his mother was the equivalent of testimony. Viewed objectively as of when he made the statement, the circumstances support no plausible inference that he anticipated its likely use in an eventual prosecution of appellant. To the extent that, in his shocked condition, he was even conscious of the implications of his utterance,

---

**5.** *Cf. People v. Cage*, 40 Cal.4th 965, 56 Cal. Rptr.3d 789, 155 P.3d 205, 217 n. 4 (2007) ("*Davis* . . . confirms that the proper focus is not on the mere reasonable chance that an out-of-court statement might later be used in a criminal trial. Instead, we are concerned with statements, made with some formality, which, viewed objectively, are for the primary purpose of establishing or proving facts for possible use in a criminal trial.") (emphasis omitted).

he likely would have thought that (a) it confirmed his mother's own witnessing, as she stood in the open door, appellant's actions in the street, and thus (b) that her testimony and his, not "a weaker substitute for [their] live testimony," *Davis,* 547 U.S. at 828, 126 S.Ct. at 2277 (citation and quotation marks omitted), would provide the basis for any prosecution.[6] While in hindsight Marlin's out-of-court utterance was indeed significant, that fact cannot make reasonable an otherwise wholly implausible inference that at the time of the assault he was mindful of the likely use of his words in a prosecution.

In sum, because Marlin's statement to his mother was properly admitted,[7] the judgment of the Superior Court is

*Affirmed.*

---

**6.** Amicus cites as an "objective[ ]" circumstance, *Davis,* 547 U.S. at 821–22, 126 S.Ct. at 2273, the fact that Ms. Thomas was detached enough to tell Marlin to retrieve the nozzle "in case ... something comes up." But, to state the obvious, it was Marlin and not his mother who was soaked in gasoline and in a state of shock, facts an objective evaluation must take seriously.

**7.** Marlin's statement, together with Ms. Thomas's corroborating testimony, was fully sufficient to justify denial of appellant's motion for a judgment of acquittal.