Ronald E. WEST, Appellant,

v.

UNITED STATES, Appellee.

No. 89–1212.

District of Columbia Court of Appeals.

Argued April 1, 1991.
Decided Nov. 13, 1991.

Calvin Steinmetz, Washington, D.C., appointed by this court, for appellant.

Bernadette C. Sargeant, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and John R. Fisher and Roy W. McLeese III, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before ROGERS, Chief Judge, STEADMAN, Associate Judge, and MACK, Senior Judge.

STEADMAN, Associate Judge:

Ronald West appeals from his convictions on nineteen counts arising out of four separate incidents over a two-month period in the spring of 1988. In each case, a woman was robbed at gunpoint of her Automatic Teller Machine ("ATM") bank card or her VISA card. In three of the cases, the woman was sexually molested. In one of the cases, the woman was killed. Appellant raises two principal arguments on appeal: 1) that the offenses should not have been joined, or, if properly joined, should have been severed; 2) that his dual convictions for kidnapping and rape in each of two single incidents should have merged.[1] We are unpersuaded by these arguments and accordingly, subject to the vacation of the two felony-murder convictions,[2] affirm.

## I: The Four Incidents

*The Raley Incident:* On March 30, 1988, complainant Raley parked on the bottom level of the parking garage at 3251 Prospect Street, N.W. Appellant had worked as a parking attendant there some years previously. She saw appellant walking along the far wall of the garage and then enter the stairwell. She waited a few minutes and then entered the stairwell. As she approached the third door leading to the stairwell, appellant stood there holding a gun in her face. He told her to lie face down as he removed cash and her Automatic Teller Machine ("ATM") card from her purse, and obtained her personal identification number for use of the card. He then

---

[1] Appellant also challenges the trial court's failure to impose any sanctions for an admitted violation of the Jencks Act, 18 U.S.C. § 3500 (1982), by a detective in failing to preserve his notes of the initial interview with one of the victims. The trial court found that the notes did not contain any description of the assailant and that the notes had been faithfully transcribed in the police report which was furnished to counsel. A trial court has broad discretion to determine what, if any, sanctions are appropriate for a Jencks violation, and its decision will be upheld unless clearly erroneous. *Butler v. United States*, 481 A.2d 431, 446–47 (D.C.1984), *cert. denied*, 470 U.S. 1029, 105 S.Ct. 1398, 84 L.Ed.2d 786 (1985); *Sullivan v. United States*, 404 A.2d 153 (D.C.1979). We find no abuse of discretion here.

[2] As the trial court recognized and both parties agree, the two felony-murder convictions must be vacated in light of the conviction on the count of premeditated murder. *Byrd v. United States*, 510 A.2d 1035 (D.C.1986).

raped her, took her jewelry, told her to count to a hundred, and departed. She obeyed his instructions, and then fled for help. Appellant was filmed using Raley's ATM card at two banks.

*The Wortman Incident:* On April 19, 1988, complainant Wortman was approached by appellant wearing a cap and glasses with a gun as she descended the stairwell to the bottom level of the parking garage at 1225 Connecticut Avenue, N.W. Appellant had also worked there as a parking attendant. She was told to lie on the ground. Appellant put a gun to her head and asked for her bank number. She said that she did not have an ATM card. She did have a VISA card which was stolen by appellant. He then fled. Ms. Coalter, a concierge in the building, had seen appellant around noon that day and then again on the elevator heading toward the basement minutes before Wortman was accosted. Appellant was wearing a baseball cap and glasses. Coalter identified appellant from a line-up photograph and at trial. On the same day as the robbery, seven attempts were made to withdraw money using the VISA card, but no photographs were taken.

*The Butler Incident:* On May 8, 1988, a Sunday, complainant Butler was sitting in her car near the intersection of Connecticut Avenue and N Street, N.W., looking at a map. She was approached by a man who, according to her testimony, "look[ed] very much like" the appellant. Appellant asked her something about her car and then, noticing that Butler was looking at a map, gave her directions. He told her of a shortcut down an alley and offered to show it to her if she would give him a ride down the alley. Butler testified that she thought appellant was a security guard.[3]

Once in the alley, appellant pulled a gun out of his jacket and pointed it at Butler. He told her to drive to the end of the alley which was in fact a dead end. He took fifty dollars and her ATM card from her purse and obtained her personal identification number for the card's use. Appellant then went around to the driver's side of the car and forced Butler to perform oral sodomy. He then ordered her to get out of the car and to lie face down across the hood as he raped her. Appellant then told her to get back in the car and wait for him as he left with her keys. Butler retrieved a spare key from her purse and drove herself to the George Washington Hospital emergency room. Appellant was filmed using Butler's ATM card to withdraw money from two separate bank cash machines.

*The Fest Incident:* On May 19, 1988, Dawn Fest was living with her fiance at 3251 Prospect St., N.W. She usually helped her fiance, who worked for the Washington Post Company, deliver papers in the morning and was expected to do so the morning of May 19. On that morning between six and seven o'clock, Alphonso Soriano, the maintenance man in the parking garage at 3251 Prospect, saw appellant outside of the garage, holding a "two-way radio."[4] Soriano knew appellant when appellant was employed as an attendant in the garage.

The nude body of Dawn Fest was found the next day in the trunk of her fiance's Volvo in the 4400 block of Hunt Place, N.E., approximately a block from appellant's girlfriend's house where he was arrested. The cause of death was two close range gunshot wounds to the head. On May 19, appellant was photographed by a surveillance camera at a bank attempting to use Fest's ATM card.[5]

---

3. In a pretrial suppression hearing, Butler testified that appellant had a walkie-talkie on his left side.

4. Six days after Coalter had seen appellant in the building at 1225 Connecticut Avenue, a "Motorola walkie-talkie" was stolen from her desk. This walkie-talkie, identified by serial number, was found in appellant's car when he was arrested two days after Fest's body was found.

5. Appellant, who testified at trial, admitted that he had used this and the other stolen ATM cards, but claimed that he had received them from one Kevin Theodore, an acquaintance of his. He denied any involvement in the first three incidents. He admitted being at the Prospect St. garage on May 19, but testified that it was Kevin Theodore who drove away with Fest that morning in a grey Volvo. Two revolvers, including that used to kill Fest, were found in appellant's bedroom after the arrest. Appellant

## II: Joinder and Severance

### A.

■ Appellant first contends that the crimes were improperly joined under Super.Ct.Crim.R. 8(a). Rule 8(a) provides:

Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Our review of joinder determinations, being a question of law, is *de novo*. *Roper v. United States*, 564 A.2d 726, 729 (D.C.1989).

■ Charges are "similar in character" if they "allege the same general kinds of crimes." *Winestock v. United States*, 429 A.2d 519, 524 (D.C.1981). Further, there is a " 'presumption in favor of joinder of offenses of a similar character.' " *(James) Arnold v. United States*, 511 A.2d 399, 404 (D.C.1986) (citation omitted). Here, the major counts in the indictment clearly allege the same "general kinds of crimes," involving the armed attack of a female, and as such were properly joined. *Ray v. United States*, 472 A.2d 854, 857 (D.C.1984). Furthermore, as the government's evidence revealed, the incidents occurred within a reasonable proximity of one another, both in time and location. Each victim was also attacked immediately after exiting or entering her car and all four incidents occurred in or near parking garages where appellant formerly was employed. Each of the surviving victims also described their assailant as carrying a dark-colored handgun. Lastly, each victim was robbed of her ATM or VISA card.[6]

■ Appellant argues that only the facts in the indictment may be considered for joinder purposes, citing *Winestock:* " '[w]hen a pretrial motion claims misjoinder of . . . offenses, the court ordinarily determines the motion on the basis of the indictment alone.' " *Winestock v. United States, supra*, 429 A.2d at 524 (quoting 8 MOORE'S FEDERAL PRACTICE ¶ 8.06.3, p. 8–39 (1980)). We think this is an overreading of the quoted language, which uses the qualifier "ordinarily." A trial court ordinarily will make a decision based on the indictment and we believe that such a determination could have been made here. However, it is not impermissible to consider other facts in determining the joinder issue. In *Winestock* itself, the court noted that the offenses alleged "were closely related in time and place." *Id.* at 524. The precise place in which an alleged offense occurred is not a required part of indictments. *See United States v. Perry*, 235 U.S.App.D.C. 283, 288, 731 F.2d 985, 990 (1984) ("Subsequent pre-trial representations . . . may suffice equally [to the indictment] to satisfy Rule 8(b)").

### B.

■ Though joinder was proper, appellant argues that the offenses should have been severed pursuant to Super.Ct.Crim.R. 14. Rule 14 provides in pertinent part that: "If it appears that a defendant . . . is prejudiced by a joinder of offenses . . . in an indictment or information or by such joinder for trial together, the Court may order an election or separate trials of counts . . . or provide whatever other relief justice requires." Defendant's motion to sever was committed to the sound discretion of the trial court and denial of such a motion will be reversed only upon a showing of the "most compelling prejudice." *In re S.G.*,

admitted he had the revolver in his car the morning of the murder but speculated Kevin may have somehow unbeknownst to him gotten it from appellant's car and returned it to the car.

6. Appellant separately challenges the inclusion of the second-degree theft charge involving the stealing of the walkie-talkie. See note 4, *supra*.

This property was stolen from the place where appellant had been the day of the assault and was similar to the one described by two of the victims as carried by their assailant. This charge was properly joined as a connected transaction, *see Grant v. United States*, 402 A.2d 405, 407 (D.C.1979), and in any event, the joinder was harmless.

581 A.2d 771, 776 (D.C.1990). Such prejudice may arise in the difficulty a defendant may have in presenting separate defenses, or from the jury inferring criminal disposition from some charges or cumulating the evidence and finding guilt when it would not have had the evidence been presented separately. *Cox v. United States*, 498 A.2d 231, 235 (D.C.1985). Therefore offenses of a similar character should be severed " 'unless (1) the evidence as to each offense is separate and distinct, and thus unlikely to be amalgamated in the jury's mind into a single inculpatory mass, or (2) the evidence of each of the joined crimes would be admissible at the separate trials of the others.' " *Id.* (quoting *Bridges v. United States*, 381 A.2d 1073, 1075 (D.C.1977), *cert. denied*, 439 U.S. 842, 99 S.Ct. 135, 58 L.Ed.2d 141 (1978)). The trial court here denied the severance motion on both grounds. We need not explore the issue of mutual admissibility, because we think the trial court's denial can be sustained on the first ground alone. *Hollingsworth v. United States*, 531 A.2d 973, 983 (D.C.1987).

We note at the outset that the trial court instructed the jury that the appellant was charged with separate offenses each of which the government was required to prove beyond a reasonable doubt. *Leasure v. United States*, 458 A.2d 726, 729 (D.C.1983). The jury was also instructed that each offense and the evidence which applied to it should be considered separately. *See Hollingsworth v. United States, supra*, 531 A.2d at 983.

■ Furthermore, despite some instances of overlap, the evidence of each incident was in the main presented separately and the appellant was not unduly prejudiced. The testimony of each surviving victim, of the representative of their respective banks who discussed the surveillance photographs of the appellant using the victim's ATM card,[7] and of other supporting witnesses was presented in distinct groups. The only expert testimony that pertained to more than one incident was that of the blood expert, but there is no requirement that such witnesses testify repeatedly with respect to each victim; rather it is simply necessary that the jury be able to keep the evidence separate. Nor is there any indication that appellant was embarrassed or confounded in presenting his defenses to the various charges.

It is true that in his closing argument, the prosecutor spoke at several points of a "creature of habit," a "signature or mark," and the like. However, the features referred to, in particular the robbery in each case of an ATM or VISA money card and the grilling for the numerical code, were rather self-evident. The suggestion that appellant raped Fest because he had done so with two others did not succeed; appellant was acquitted of the Fest rape charge. We conclude under all the circumstances that the denial of the severance motion presents no cause for reversal here.

### III: Kidnapping Merger

■ Appellant also argues that the kidnappings of Raley and Butler were merely incidental to the rapes and robberies of those victims and thus that those convictions should have merged.[8] In *Robinson v. United States*, 388 A.2d 1210, 1211–12 (D.C.1978), we set forth the test to be used as follows:

The facts of each case must be examined to determine whether in fact two separate crimes were committed, or whether they merged.

In making this determination, we inquire whether the asportation (or seizure) in a given case was of the type incidental to every rape or whether the confinement and restraint were signifi-

---

7. Appellant asserts that "numerous bank photos, records and videos" were presented to the jury, lending to potential confusion. However, appellant admitted using the cards stolen in at least three of the incidents, which effectively removed this issue from factual dispute. See note 5, *supra*.

8. Little turns on the outcome of this issue. Appellant was sentenced to concurrent, identical terms for the kidnapping and rape in each instance. The armed robbery sentences were consecutive. The total of appellant's sentences on all counts was 81 years to life plus 183 years, with a mandatory-minimum sentence of 50 years.

cant enough of themselves to warrant an independent prosecution for kidnaping. A like question is whether the "kidnaping" substantially increased the risk of harm over and above that necessarily present in the underlying crime.
(Citations omitted.) More recently, in a case involving the question whether kidnapping merged with a robbery charge, we noted that while merger occurs when the detention or confinement[9] is an "integral part" of the robbery, "where a jury could reasonably conclude that the detention or confinement was not 'approximately coextensive' in time and place with the crime itself, then each may constitute a separate criminal act." *Catlett v. United States,* 545 A.2d 1202, 1215 (D.C.1988), *cert. denied,* 488 U.S. 1017, 109 S.Ct. 814, 102 L.Ed.2d 803 (1989). Thus, we said, a separate kidnapping conviction would be upheld where the kidnapping element "exposed the victim to more danger and decreased the risk that appellants would be caught." *Id.* at 1216. *See also Beck v. United States,* 402 A.2d 418 (D.C.1979); *Sinclair v. United States,* 388 A.2d 1201 (D.C.1978), *cert. denied,* 439 U.S. 1118, 99 S.Ct. 1026, 59 L.Ed.2d 77 (1979).

▆ Applying the criteria set forth in these decisions,[10] we think the trial court was correct in refusing to merge the kidnapping into the rape and robbery convictions. In each incident, the facts warranted a conclusion that the seizure exceeded that "incidental" to the rape or robbery[11] and both temporally and in kind was more than "approximately coextensive" with the underlying incidents themselves. In addition, in each case, the kidnapping feature enhanced the likelihood of success in perpetrating the underlying crime.

The Raley incident extended over a period of a quarter of an hour. After ordering

Raley to the ground, appellant went through her purse and wallet, removing cash and looking at her credit cards. When he came to the ATM card, he pointed the gun at Raley's neck and demanded the code. After Raley gave it to him, he continued to hold her at gunpoint as he "repeatedly" grilled her about her ATM number, asking her "Are you lying?" He then continued going through her purse. Next, he pulled Raley's "skirt and ... coat up, ... took [her] hose off ... took [her] underwear off," and finally raped her. That finished, he stripped her of her ring, watch, necklace, and earrings, and then asked her what else she had. Finally, he told Raley to count to a hundred and climbed up the first level of stairs. Just before leaving, he turned back and told Raley to "keep counting," an order she obeyed. In the Butler incident, appellant, having induced the complainant to enter an alley on the ruse that it was a shortcut,[12] ordered her at gunpoint to drive to the dead end of the alley, where he committed the rape and the other offenses. As with Raley, there was repeated interrogation about the ATM code. As he departed, he ordered the complainant to put her head on the car's steering wheel and wait there until he came back. In both cases, the detention extended over a considerable period of time and provided the opportunity for appellant to perpetrate a series of unrelated offenses on the complainant: in the case of Raley, a robbery of cash and an ATM card from her purse, then a rape, then the removal of her ring, watch, necklace, and earrings from her person; in the case of Butler, the robbery of cash and an ATM card, then sodomy within the car, then a rape on the car hood, then more interrogation about the ATM code number. Furthermore, in both cases, the complainant was ordered to remain where she was for a period of time following the crime

---

9. Under our statute, there is no requirement that the victim be moved any particular distance or held for any particular length of time to constitute a kidnapping; all that is required is a "seizing, confining" or the like and a "holding or detaining" for ransom or reward "or otherwise." D.C.Code § 22–2101 (1989); *Robinson v. United States, supra,* 388 A.2d at 1211.

10. The government does not here challenge the use of these factual criteria to resolve the merg-

er issue. *Cf. Byrd v. United States,* 598 A.2d 386 (D.C.1991) (en banc).

11. The Butler incident also involved sodomy.

12. The kidnapping statute, apart from seizures and confinements, also applies to acts of "inveighing, enticing, decoying." D.C.Code § 22–2101 (1989).

itself and the departure of appellant.[13] On these facts, the confinement and restraint in each instance were "significant enough of themselves," *Robinson v. United States, supra,* 388 A.2d at 1211, to warrant the independent convictions for kidnapping.

Appellant's reliance on *Robinson, supra,* and *Vines v. United States,* 540 A.2d 1107 (D.C.1988) is unfounded. In *Robinson,* where the defendant seized the victim and dragged her "approximately 63 paces" before throwing her to the ground and attempting to rape her, the court found that the seizure and asportation were "clearly incidental" to the assault, and the likelihood of bodily harm was not substantially increased. It was a single uninterrupted event and no mention was made that the asportation significantly diminished the likelihood of detection.

*Vines* is a closer case, but nonetheless distinguishable. There, two men in a basement were forced into a laundry room, robbed, and told to lie on the floor of an adjoining storage room. The perpetrator shut the door, placed a brick against it, and left. On the particular facts, we found the detentions "momentary and coextensive in time and place" with the robbery and that the movement into the storage room, "while facilitating appellant's escape, did not render it more likely that he would avoid apprehension." There was no explicit instruction in *Vines* that the victims remain nor did the brick present any obstacle to their pushing open the door. More importantly, in *Vines* there was no overarching detention over an extended period facilitating the commission of a series of distinct crimes and creating a transcendent atmosphere of threats and terror in the confinement.

The two convictions on the counts of felony murder are vacated.[14] In all other respects, the judgment appealed from is

*Affirmed.*

---

**13.** In the Butler incident, there was also a significant asportation of the complainant to a more remote area.

**14.** See note 2, *supra.*