**Joseph C. HOWERTON, Appellant,**

v.

**UNITED STATES, Appellee.**

**Nos. 04–CF–1058, 06–CO–599.**

District of Columbia Court of Appeals.

Argued March 11, 2008.

Decided Feb. 19, 2009.

Cynthia Nordone, appointed by the court, for appellant.

James Klein and Alice Wang, Public Defender Service, filed a brief amicus curiae on behalf of appellant.

* Judge Farrell was an Associate Judge of the court at the time of argument. His status changed to Senior Judge on January 23, 2009.

** Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

Sharon A. Sprague, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney, Roy W. McLeese III and Elizabeth Trosman, Assistant United States Attorneys, were on the brief, for appellee.

Before, THOMPSON, Associate Judge, FARRELL, Senior Judge,* and ISCOE, Associate Judge, Superior Court of the District of Columbia.**

THOMPSON, Associate Judge:

On May 13, 2004, a jury convicted appellant Joseph Howerton of the following charges: assault with a dangerous weapon (gun) ("ADW") (D.C.Code § 22–402 (2001)); threatening to injure a person ("felony threat") (D.C.Code § 22–1810 (2001)); carrying a pistol without a license ("CPWL") (D.C.Code § 22–4504(a) (2001)); possession of an unregistered firearm ("UF") (D.C.Code § 7–2502.01 (2001)); unlawful possession of ammunition ("UA") (D.C.Code § 7–2506.01(3) (2001)); unlawful possession of drug paraphernalia (D.C.Code § 48–1103(a) (2001)); and, unlawful possession of a controlled substance (crack cocaine) with the intent to distribute it ("PWID") (D.C.Code § 48–904.01 (2008 Supp.)).[1] Appellant challenges his convictions on the weapons charges (CPWL, UF, and UA) on the ground that they were obtained in violation of his rights under, and on the basis of statutory provisions that he asserts were invalid under, the Second Amendment to the U.S. Constitution. He challenges his CPWL conviction on the additional ground that the evidence was insufficient to sustain the charge. As to his drug convictions, appellant contends

1. This statute was last amended on June 8, 2001. *See* D.C. Law 13–300 § 2(c), 47 D.C.Reg. 7037.

that joinder of the drug charges with the ADW and threat charges was improper. He also argues that his trial counsel's failure to challenge the joinder or to move for severance amounted to ineffective assistance of counsel, entitling him to relief. We reject appellant's arguments and affirm.

## I.

The government's evidence at trial established that at the time of the incidents that led to his arrest, appellant shared an apartment with his girlfriend, Kimberly Harrison, and the couple's then-seven-year-old child. In January 2004, appellant received a paycheck from which an amount had been deducted in payment of court-ordered child support. On January 26, 2004, appellant demanded that Harrison "call them [*i.e.,* the court or other District of Columbia officials] and tell them you don't want [child support]." When Harrison refused, appellant held a gun to her head and told her he was going to kill her. Harrison reported the incident to police, and a warrant issued for appellant's arrest.

On January 28, 2004, police entered the apartment with keys supplied by Harrison and found appellant wearing only his boxer shorts, talking on the telephone in the doorway to the kitchen. Police arrested and handcuffed appellant and had him sit on a couch while they searched the apartment. On the kitchen table, police found what appeared to be (and was later determined to be five grams of) crack cocaine, along with implements used to cut and package the drug for sale. In the bedroom, about 18–20 feet from where appellant had been standing when police entered the apartment, police found a loaded

black 9mm Glock handgun, surrounded by appellant's work identification, wallet, and various other possessions, on top of a dresser that appellant used. Harrison identified it as the same gun that appellant had pointed at her on January 26. Police officers found additional ammunition in a drawer of the same dresser.

After a jury found appellant guilty on all charges brought as a result of the incidents described above, the trial court sentenced him, on July 26, 2004, to a total term of twelve years' incarceration, followed by five years of supervised release. The sentence included three years plus a period of supervised release for ADW, one year for CPWL, one year for UF, and one year for UA, all to be served consecutively. Appellant's trial counsel filed a direct appeal.

On May 31, 2005, appellant, with new counsel, moved to vacate judgment and sentence pursuant to D.C.Code § 23–110 (2001), arguing that his trial counsel was constitutionally ineffective for failing to challenge the joinder of offenses under Super. Ct.Crim. R. 8(a), or to move for severance under Super. Ct.Crim. R. 14. The trial court denied appellant's motion without a hearing. He appealed from that ruling, and on June 9, 2006, we ordered consolidation of the two appeals. The appeals were argued on March 11, 2008. Thereafter, we allowed supplemental briefing by the parties and by *amicus* Public Defender Service ("PDS") in light of the Supreme Court's decision in *District of Columbia v. Heller,* —— U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008).[2] That briefing was completed on October 30, 2008.

---

**2.** In *Heller,* the Supreme Court concluded that the District of Columbia's "ban on handgun possession in the home violates the Second Amendment, as does its prohibition against rendering any lawful firearm in the home operable for the purpose of immediate self-defense." 128 S.Ct. at 2821–22.

## II.

We begin with appellant's argument, which relies on the Supreme Court's opinion in *Heller*, that his convictions for CPWL, UF and UA were obtained in violation of the Second Amendment.[3]

### A. Standard of Review

Appellant did not raise his Second Amendment claim in the trial court. His failure to preserve the claim means that we will consider it only "under the rubric of plain-error review." *Sims v. United States*, 963 A.2d 147 (D.C.2008). This means that, to prevail, appellant must show that entry of judgment on his weapons convictions "was (1) error, (2) that is plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings." *Coleman v. United States*, 948 A.2d 534, 544 (D.C.2008) (quotation marks and citation omitted).

■■ Appellant argues that harmless-error review[4] rather than plain-error review is warranted because the Second Amendment claim he now raises asserts a jurisdictional error, which can be raised at any time. We rejected substantially the same argument in *Sims*, finding persuasive the reasoning of the United States Court of Appeals for the District of Columbia Circuit, in *United States v. Drew*, 339 U.S.App. D.C. 413, 418, 200 F.3d 871, 876 (2000), and *United States v. Baucum*, 317 U.S.App. D.C. 63, 80 F.3d 539 (1996), that a constitutional claim is not jurisdictional and may be forfeited by failure to raise it in the trial court. *Sims*, 963 A.2d at 149. We must reject the argument here as well. *See M.A.P. v. Ryan*, 285 A.2d 310 (D.C.

1971) ("[n]o division of the court may overrule another division").

Appellant argues that *Arrington v. United States*, 585 A.2d 1342 (D.C.1991), requires a different result, but the facts of that case make it (and its dictum on which appellant relies) inapposite here. The claim in *Arrington* related to a schedule of controlled substances, which by statute was to be revised and republished annually. *See* D.C.Code § 33–523 (1988). Arrington argued that the latest revised schedule had expired, and thus the relevant statutory prohibition had "ceased to exist," before the date when he possessed and was prosecuted for possessing the substance in question. *Arrington*, 585 A.2d at 1344 n. 2. He contended that the expiration meant that the government had no valid ground for prosecuting him for unlawful possession of a controlled substance, and that the court had no basis for criminal jurisdiction (there being no violation of any law). *Id.* at 1343–44. We rejected that argument on the merits, finding that the schedule of controlled substances had not expired upon the failure to re-publish. *Id.* at 1347. In a footnote, we also addressed the government's assertion that Arrington had waived the argument that he was advancing on appeal by failing to raise it in the trial court. It was in that context that we observed that "[a]ppellants' challenge to the validity of the Act, that the statute had become invalid and ceased to exist, raises a jurisdictional issue. . . . Challenges to a court's subject matter jurisdiction cannot be waived." *Arrington*, 585 A.2d at 1344 n. 2.

■■ Even if we assume that this statement in *Arrington* were other than dictum, it would not control on the quite

---

**3.** The Second Amendment provides: "A well regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

**4.** *See Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

different facts that are before us in this case. Here, there is no question that the various statutes under which appellant was convicted were in effect at the time he committed his weapons offenses as well as when he was prosecuted and convicted.[5] Consequently, the trial court was not without jurisdiction to try him. As the *Baucum* court explained:

> When a federal court exercises its power under a presumptively valid federal statute, it acts within its subject-matter jurisdiction.... It is true that once a statute has been declared unconstitutional, the federal courts thereafter have no jurisdiction over alleged violations (since there is no valid "law of the United States" to enforce), but Baucum's belated assertion of a constitutional defect does not work to divest that court of its original jurisdiction to try him for a violation of the law at issue.

*Baucum,* 317 U.S.App. D.C. at 64–65, 80 F.3d at 540–41.

### B. Plain–Error Analysis

■ Turning to our plain-error analysis, we reject appellant's prayer for relief from his CPWL, UF and UA convictions. In *Heller,* the issue was the constitutionality of the District of Columbia's ban on "the possession of usable handguns *in the home.*" *Heller,* 128 S.Ct. at 2787–88 (em-

phasis added). Because appellant's weapon-possession offenses took place in the apartment appellant shared with Harrison, his case is distinguishable from *Sims,*[6] and comes within the scope of *Heller* at least with respect to the location of his gun. But, in the end, appellant Howerton fares no better than the appellant in *Sims.* The focus of the Supreme Court's analysis in *Heller* was the right "to use arms *in defense of* hearth and home." 128 S.Ct. at 2821 (emphasis added). The Court held that the Second Amendment forbids any "absolute prohibition of handguns held and used *for self-defense* in the home."[7] *Id.* at 2822 (emphasis added). Appellant's claim—that the trial court plainly erred when it entered judgment against him in violation of his Second Amendment rights—fails, because the jury found (when it convicted him of ADW-gun) that he used the gun in question to assault Harrison and no evidence was presented that he possessed the gun for purposes of self-defense. *See Heller,* 128 S.Ct. at 2799 (recognizing that Second Amendment rights are not unlimited, such that "we do not read the Second Amendment to protect the right of citizens to carry arms for *any* sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose") (emphasis added).[8]

5. Moreover, as we discuss in section II.B *infra,* we have serious doubt about whether, as appellant and *amicus* argue, *Heller* rendered *facially* invalid, or invalidated in their entirety, the particular gun-control statutes under which appellant was convicted. Even where a statute contains a facially unconstitutional provision, "the normal rule[s]" are "that partial, rather than facial, invalidation is the required course," *Brockett v. Spokane Arcades, Inc.,* 472 U.S. 491, 504, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985), and that a court "should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Id.* at 502.

6. Sims's offense occurred in an alley somewhat removed from his home. *See Sims, supra,* 963 A.2d at 149–50.

7. As we noted in *Sims, supra,* 963 A.2d at 150, the issue of any further reach of *Heller* remains unanswered.

8. Even if we posit that appellant had sought registration certificates and licensure to carry a gun and ammunition for self-defense commencing on January 28, *Heller* does not tell us plainly that the District would have violated appellant's Second Amendment rights had it refused his requests while knowing that a warrant had issued for his arrest in connec-

It also is not plain, as appellant and *amicus* urge, either that the particular statutes under which appellant was prosecuted and convicted (D.C.Code §§ 7–2502.01, 7–2506.01(3), and 22–4504(a) (2001)) are facially unconstitutional or that these statutes have been invalidated.[9] The opinion in *Heller* leaves no doubt that, collectively, the District's gun-control laws, and the District's application of these laws and their implementing regulations, swept too broadly, amounting to a "ban on handgun possession in the home" that "violates the Second Amendment." *Heller*, 128 S.Ct. at 2821; *see also id.* at 2788 ("The District of Columbia generally prohibits the possession of handguns").[10] That does not mean, however, that any of the particular statutes at issue here is facially invalid. Notably, the Supreme Court in *Heller* did not declare invalid any of the individual statutes under which appellant Howerton was convicted. Moreover, to make a successful facial challenge to the statutes in

issue here, appellant "must establish that no set of circumstances exists under which [they] would be valid." *McPherson v. United States*, 692 A.2d 1342, 1344 (D.C. 1997) (quoting *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987)). It is not "plain" that appellant can show that with respect to the statutes under which he was charged and convicted.

For example, D.C.Code § 22–4504(a) (2001) (the CPWL statute) prohibited carrying a pistol without a license. But section 22–4504(a) did not prohibit (and neither did any other provision at issue in this case expressly prohibit) the issuance of a license to possess a gun in the home.[11] Further, the *Heller* Court explicitly declined to address the validity of the District's licensing requirement. *See* 128 S.Ct. at 2819 (we "do not address the licensing requirement"). And, the Court specifically directed the District to issue a

tion with a gun assault two days earlier. Nor does the opinion in *Heller*—which arose from a citizen's resort to judicial remedies to challenge the District's gun laws *before* obtaining a gun—make it plain that appellant was entitled to avoid prosecution where he carried a gun and ammunition in defiance of the District's licensing and registration laws.

9. The opinion in *Heller* did not mention D.C.Code § 7–2506.01 (2001), the statute that underlies appellant's UA conviction. *See* D.C.Code § 7–2506.01(3) (2001) (generally prohibiting the possession of ammunition without a valid registration certificate for a weapon of the same caliber). However, appellant and *amicus* PDS argue that the reasoning of *Heller*—recognition of the right to possess a weapon that is immediately operable for the purpose of self-defense—requires a conclusion that the restriction imposed by section 7–2506.01(3) is unconstitutional.

10. And, the fact that an act "might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since [the Supreme Court has]

not recognized an 'overbreadth' doctrine outside the limited context of the First Amendment." *Salerno, supra*, 481 U.S. at 745, 107 S.Ct. 2095.

11. We recognize that subparagraphs (1)-(3) of D.C.Code § 7–2502.01(a) (2001) contained a very limited list of entities and persons to whom a firearm registration certificate might be issued. In addition, we note, the regulation formerly codified at 24 DCMR § 2304.15 (repealed effective January 13, 2009, *see* 56 D.C.Reg. 624 (Jan. 16, 2009)), entitled "Licenses for Concealed Weapons," provided that the license applicant "shall register the pistol for which the license will apply." As the Supreme Court recognized, the interaction of the District's laws made gun licensure generally impossible to obtain. Our point, however, is that the CPWL statute, D.C.Code § 22–4504(a) (2001), did not on its face limit who might obtain a license to obtain a gun. *See also* D.C.Code § 22–4506 (2001) (authorizing the Chief of Police to issue a license to, *inter alia*, an applicant who "has good reason to fear injury to his or her person or property").

license to Heller to carry a gun in his home if he met other regulatory requirements. 128 S.Ct. at 2822 ("Assuming that Heller is not disqualified from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home"). So, appellant's assignment of "plain error"—the argument that *Heller* makes it "plain" that the CPWL statute under which appellant was convicted, D.C.Code § 22–4504(a) (2001), was unconstitutional on its face—must fail.[12]

■ For similar reasons, we do not think appellant has met the fourth prong of the plain error test. Addressing the fourth prong, *amicus* argues that it "is difficult to imagine an error that more seriously affects the fairness, integrity or public reputation of judicial proceedings than criminally punishing an individual for exercising a fundamental constitutional right. . . ." But, as the Supreme Court reasoned in *Heller,* the Second Amendment protects "bearing arms for a lawful purpose" by "law-abiding, responsible citizens . . . in defense of hearth and home." *Heller,* 128 S.Ct. at 2813, 2821. Allowing appellant's weapon-possession convictions to stand where he used the firearm in question for an unlawful purpose two days before the date on which police found him in possession of the firearm and ammunition in no way tramples upon the values that we seek to protect through our fourth-prong analysis.

### III.

■ Appellant challenges his CPWL conviction on an additional basis: insufficiency of the evidence. His argument, which is that the government did not prove

that he "carried" a gun outside of his dwelling place, is unavailing. For purposes of the CPWL statute, a defendant may be found to have "carried" a pistol if the pistol "was in such proximity . . . as to be convenient of access and within reach." *In re R.G.,* 917 A.2d 643, 647 (D.C.2007) (citation omitted). Here, the evidence was that police found the gun in question on top of a dresser about eighteen feet from where appellant was standing when police entered the apartment. That evidence sufficed to show that the gun was "convenient of access." *See White v. United States,* 714 A.2d 115, 119, 120 (D.C.1998) (holding that pistol was convenient of access where it was in an open box in the back of ice cream truck, which was "specifically designed to allow the driver to walk easily to the rear section, just a few steps away from the driver's seat," and thus a jury "could reasonably find that the location of the gun did not present any obstacle denying [defendant] convenient access to the weapon" if prompted to use it by any violent motive). Further, proof that the gun was outside "the person's dwelling place" is necessary only for a felony CPWL conviction (*see* D.C.Code § 22–4504(a)(1) (2001)), which the government neither sought nor obtained here. Appellant was charged under D.C.Code § 22–4504(a), and received a misdemeanor sentence (one year) as authorized by D.C.Code § 22–4515 (2001).

The government presented evidence of appellant's constructive possession of the gun (established in part by appellant's exercise of control of the gun on January 26, 2004, and, on the day of appellant's arrest, the gun's location on a dresser that appellant used and that held his personal papers

---

12. Similarly, there does not appear to be anything facially improper about the introductory paragraph of D.C.Code § 7–2502.01(a) (2001) (requiring that firearms be registered) nor about D.C.Code § 7–2506.01(3) (2001) (prohibiting possession of ammunition without a registration certificate for a firearm of the same caliber).

and effects) and his proximity to the gun when the police found it.[13] That evidence was sufficient to establish that appellant, who did not have a license, carried a pistol on or about January 28, 2004.

### IV.

In the trial court, appellant did not challenge joinder of his drug-related charges with the ADW and threats charges, and he did not file a motion for severance. In these circumstances, we ordinarily would not review at all [14] or would apply plain-error review, in considering his claims that there was misjoinder and that severance was required. *See Taylor, supra* note 14, 603 A.2d at 455 (citing *Smith v. United States*, 561 A.2d 468, 472 (D.C.1989)). Here, however, the failure timely to raise and preserve these claims was the subject of appellant's motion, under D.C.Code § 23–110, claiming ineffective assistance of counsel, the denial of which we are also asked to review. In deciding whether the trial court erred in denying that motion, part of our task is to consider whether, if brought, the motions would likely have been successful. *See Taylor*, 603 A.2d at 459 ("[A]n attorney's failure to file a par-

ticular motion will not be regarded as ineffective assistance unless such a motion, if filed, would in all likelihood have been granted"). Accordingly, we approach our review in much the same way as we would have if these claims had been preserved. *See Gooch, supra* note 18, 609 A.2d at 262 n. 3 ("Since the issue is pertinent to resolution of the claim of ineffective assistance of counsel, we address it").

Rule 8 (a) of the Superior Court Rules of Criminal Procedure provides that:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, or both, are of the same or similar character or are based on the same act or transaction or on 2 or more acts or transactions connected together or constituting parts of a common scheme or plan.

Super. Ct.Crim. R. 8(a) (entitled "Joinder of offenses"). We construe this rule "broadly in favor of initial joinder." *Sweet v. United States*, 756 A.2d 366, 375 (D.C. 2000). But even where joinder would oth-

---

13. *See White, supra*, 714 A.2d at 119 ("To establish constructive possession, the government must show, by either direct or circumstantial evidence, that the defendant knew of the presence of the weapon, that he had dominion and control over it, and that he intended to guide its destiny") (citations and internal quotation marks omitted); *Williams v. United States*, 884 A.2d 587 (D.C.2005) (to sustain a CPWL conviction, "the government's evidence must go beyond mere proof of constructive possession and must show that the pistol was in such proximity to the person as to be convenient of access and within reach").

14. *See Gooch v. United States*, 609 A.2d 259, 262 n. 3 (D.C.1992) (explaining that a "request for relief from misjoinder under [Super. Ct. Civ. R.] 8(a) attacks the indictment [and] must be filed within twenty days after the

status hearing in felony cases," as is required by Super. Ct.Crim. R. 12(b)(2)). Similarly, motions for severance under Super. Ct.Crim. R. 14 must be raised *before* trial, per Super. Ct.Crim. R. 12(b)(5). "Unless raised as required, the challenge is deemed to be waived." *Gooch*, 609 A.2d at 262 n. 3; *Taylor v. United States*, 603 A.2d 451, 455 (D.C. 1992) ("the failure to raise a timely Rule 8 objection constitutes waiver of that objection") (quoting *Evans v. United States*, 392 A.2d 1015, 1023 (D.C.1978)) (internal quotation marks omitted); *see also* Super. Ct. Crim. R. 12(d) ("Failure by a party to raise defenses or objections or to make requests which must be made prior to trial, at the time required by Rule 47–I or prior to any extension thereof made by the Court, shall constitute waiver thereof, but the Court for cause shown may grant relief from the waiver").

erwise be proper, the trial court may, under Super. Ct.Crim. R. 14, sever joined offenses in the interest of justice.[15] *Wright v. United States,* 570 A.2d 731, 734 n. 8 (D.C.1990); *Ray v. United States,* 472 A.2d 854, 859 n. 8 (D.C.1984). Severance is required only when it is necessary to permit a defendant to have a fair trial. *Void v. United States,* 631 A.2d 374, 379 (D.C.1993). A defendant is not entitled to prevail on a motion for severance merely upon a showing that he would have a better chance of acquittal if the charges were tried separately. *Parker v. United States,* 751 A.2d 943, 947 (D.C.2000). Rather, he must show "most compelling prejudice" from misjoinder. *Winestock v. United States,* 429 A.2d 519, 527 (D.C. 1981).

■ We agree with the government that the ADW threats and drug-related charges involved here arose from transactions that were sufficiently "connected together," Super Ct.Crim. R. 8(a), that joinder was proper. Appellant does not dispute that the weapons (CPWL, UF and UA) and drug-related charges were properly joined.[16] The joinder of that body of charges to the ADW/threats charges was proper because police discovered the gun, drugs and drug paraphernalia in the apartment while executing an arrest warrant in response to a complaint about the assault and threats that had taken place in the same apartment, and the gun was connected to the ADW charge. These circumstances are like those in other cases in which we have held that joinder was proper. *See, e.g., Joyner, supra* note 21 (involving joinder of assault and gun-possession charges with charge of possession of heroin, which police found near the gun when searching the area after arresting defendant on the assault and gun charges); *West v. United States,* 599 A.2d 788, 791 n. 6 (D.C.1991) (upholding joinder of second-degree theft charge, involving the stealing of the walkie-talkie, with assault charges, where the device was stolen from the location of one assault and was similar to a device that victims of two other assaults identified as carried by their assailant); *see also United States v. Fortenberry,* 919 F.2d 923, 926 (5th Cir. 1990) (holding that Rule 8(a) was flexible enough to permit joinder of weapons possession and arson charges where the pistol was discovered during the arson investigation); *United States v. Pietras,* 501 F.2d 182, 185 (8th Cir.1974) (where gun was found in robbery get-away car though not used in the robbery, joinder of weapon-possession and robbery/kidnaping charges was proper).

■ Moreover, as the trial court observed, evidence that appellant assaulted and threatened Harrison with a gun on January 26 and, thus, actually possessed a gun on that date would have been admissible in a separate trial on the gun and drug charges to show that appellant had constructive possession of the gun found on

---

15. Super. Ct.Crim. R. 14 ("Relief from prejudicial joinder") provides, in pertinent part, that: "If it appears that a defendant ... is prejudiced by a joinder of offenses ... for trial together, the Court may order an election or separate trials of counts ... or provide whatever other relief justice requires."

16. And, in any event, "[w]here different types of contraband had been seized in a proper search of premises, courts have found joinder of different charges as to each type of contraband proper under Rule 8(a)." *Joyner v. United States,* 540 A.2d 457, 459 (D.C.1988); *see also United States v. Chavis,* 296 F.3d 450, 459 (6th Cir.2002) ("The tools of the trade argument generally permits joinder ... when the firearms charges and the drug charges are sufficiently connected temporally ... as when ... both guns and drugs are uncovered in the same search.").

the dresser during the search on January 28. For that reason, too, joinder was proper. *See West, supra,* 599 A.2d at 792. As courts have recognized, "the primary purpose of [Rule 8(a)] joinder is to insure that a given transaction need only be proved once.... Where there is substantial overlap in evidence between two offenses, joinder eliminates the need to prove substantially the same evidence twice over, thus realizing precisely the kind of economy envisaged by Rule 8(a)." *United States v. Richardson,* 161 F.3d 728, 734 (D.C.Cir.1998) (citations and internal quotation marks omitted).

■ Severance would nonetheless have been required if there was undue prejudice from trying the ADW/threats and drug-related charges in the same proceeding. Here, we do not discern such prejudice. The offenses were not similar in nature and, as we observed in *Reyes v. United States,* 933 A.2d 785, 794 (D.C.2007), the "evidence as to each offense [was] sufficiently simple and distinct, and there [was] little risk that the jury would amalgamate the evidence unfairly." *Id.* at 794; *see also Gooch, supra,* 609 A.2d at 264–65 ("the requisite prejudicial effect for a severance will not be found where the evidence can be kept separate and distinct at trial"). In her closing argument, the prosecutor summarized the evidence in separate portions of its presentation (telling the jury at the close of the government's argument relating to the events of January 26, "Now the second part of the evidence that I want to talk to you about is the gun evidence and the next three charges in the indictment ..."). We are not persuaded by appellant's argument that the domestic violence nature of the charges created an extreme risk of prejudice against appellant as to the drug charges, or (in light of the fact that jurors would hear about the child and child support in the ADW case) that

there was an extreme risk of prejudice from "jurors' feelings about drugs where children live." *Cf. State v. Hermann,* 38 Conn.App. 56, 658 A.2d 148, 152 (1995) (reasoning that charges of interference with police, sexual assault, and risk of injury to a child were "separate and easily distinguishable," and that charges of sexual assault and risk of injury to children are "not necessarily so brutal and shocking as to mandate severance ... if the jury is properly instructed to consider the counts separately"). The fact that some witnesses testified both about the ADW and threats and about drugs and drug paraphernalia does not indicate that the evidence of each charged offense would be "amalgamated into a single inculpatory mass." *Woodard v. United States,* 719 A.2d 966, 972 (D.C.1998) (citation omitted).

In addition, the trial court explicitly instructed the jury to consider each count separately, thereby reducing any prejudicial effect of joinder. As the government points out, the verdict form given to the jury contained, in bold type, an instruction that "[t]he fact that you found the defendant guilty or not guilty on one count should not control or influence your verdict with respect to any other count." *See Burgess v. United States,* 953 A.2d 1055, 1056 n. 2 (D.C.2008) (concluding that trial court did not abuse its discretion in denying severance motion where "the trial court's final instructions to the jury emphasized the separate and distinct nature of each of the" incidents for which appellant was tried). Thus, the court met its "continuing duty to take adequate measures to guard against unfair prejudice from joinder." *Carpenter v. United States,* 430 A.2d 496, 501 (D.C.1981) (en banc). On this record, we conclude that a motion challenging the joinder of the drug/gun charges with the ADW/threats charges or a motion for severance would

have lacked merit.[17] We also conclude that it is highly unlikely that either motion would have been granted.

■ To obtain relief on a claim that his trial counsel provided ineffective assistance, appellant must show both deficient performance and prejudice. *Strickland v. Washington,* 466 U.S. 668, 700, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) ("Failure to make the required showing of *either* deficient performance or prejudice defeats the ineffectiveness claim"). Because of our conclusions as to the merit and likelihood of success of the omitted motions in question here, we must also conclude, as the trial court did, that appellant has not made the requisite showing. *See Taylor, supra* note 14, 603 A.2d at 459 ("Since there was no misjoinder, counsel's failure to seek severance under Rule 8 could not have constituted ineffective assistance.") (citing *Jefferson v. United States,* 474 A.2d 147, 150 (D.C.1984)); *Al–Mahdi v. United States,* 867 A.2d 1011, 1025 (D.C.2005) (concluding that defendant's right to effective assistance of counsel was not violated by counsel's failure to file motion to suppress because it would not have been meritorious). Finally, because the trial judge was not required to resolve any factual dispute or make credibility findings to resolve the section 23–110 motion, the judge was not required to conduct an evidentiary hearing before ruling on the motion.[18] *See Al–Mahdi,* 867 A.2d at 1022 n. 18 (no hearing on a 23–110 motion is required where a claim can be resolved on the basis of the existing record).

For the foregoing reasons, the judgments of conviction are

*Affirmed.*

THOMPSON, Associate Judge, concurring.

I write separately to describe another reason that persuades me that appellant cannot satisfy the plain-error test with respect to his Second Amendment challenge to his gun-possession convictions. We have interpreted the fourth prong of that test to permit reversal of a conviction "only in exceptional circumstances where a miscarriage of justice would otherwise result." *Brawner v. United States,* 745 A.2d 354, 357 (D.C.2000) (citations omitted); *see also United States v. Frady,* 456 U.S. 152, 163 n. 14, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (explaining that courts of appeals "long have recognized" that they are to use their power under the plain-error rule "sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result"); *United States v. Olano,* 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (same). On the facts of this case, leaving appellant's weapons-possession convictions undisturbed does not amount to a miscarriage of justice.

Appellant was charged with UF, UA, and CPWL, offenses that the government prosecuted under D.C.Code §§ 7–2502.01, 7–2506.01(3), and 22–4504(a) (2001). The government might instead (or in addition) have charged appellant with another possession offense, to wit, possession of a firearm during a crime of violence ("PFCV"), *see* D.C.Code § 22–4504(b), on

---

17. For that reason, we conclude that the trial judge did not err, let alone plainly err, in not severing the charges *sua sponte.*

18. We recognize that, in ruling on the section 23–110 motion, the trial judge did refer to the affidavit of appellant's trial counsel and found that "it appears that trial counsel made a

strategic decision not to file a motion challenging joinder" or seeking severance. (Order Denying Motion to Vacate Judgment, at 4–5). But the court also set out its alternative reasoning that, under applicable legal principles, neither motion would have been likely to succeed. Order at 5–9.

the basis of his having possessed a firearm while assaulting Harrison on January 26, 2004. And, the jury actually found appellant guilty of offenses that make up the elements of PFCV: commission of a "crime of violence," which term includes ADW,[1] while possessing a pistol. *See* D.C.Code § 22–4504(b). The PFCV statute, whose constitutionality *Heller* has not placed in question,[2] provides for a mandatory minimum jail term of five years. *See* D.C.Code § 22–4504(b). By contrast, for his weapons (UF, UA, and CPWL) convictions, appellant was sentenced to total jail time of three years (and he was sentenced

to serve three additional years for the ADW conviction). I can see no miscarriage of justice in allowing the weapons convictions to stand, when appellant could have received a much more severe sentence[3] on the same body of evidence, with not even an arguable infringement of Second Amendment rights.[4]

---

1. *See* D.C.Code § 22–4501(f) (2001).

2. *See District of Columbia v. Heller,* —— U.S. ——, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008). Unlike the CPWL statute (D.C.Code § 22–4504(a)), the PFCV statute, D.C.Code § 22–4504(b), was not a subject of the grant of certiorari in *Heller* and was not mentioned in the Supreme Court's opinion in the case. *See also District of Columbia v. Heller,* —— U.S. ——, 128 S.Ct. 645, 169 L.Ed.2d 417 (2007) (granting certiorari limited to reviewing whether D.C.Code §§ 7–2502.02(a)(4), 22–4504(a), and 7–2507.02 violate Second Amendment rights).

3. That is, appellant could have been sentenced to a minimum of five years for PFCV plus three consecutive years for ADW. The PFCV and ADW convictions would not have merged. *See Freeman v. United States,* 600

A.2d 1070, 1073 (D.C.1991) (concluding that PFCV and ADW convictions did not merge because "[i]n creating the offense of possession of a firearm during a crime of violence, the Council focused on the concern that firearms were increasingly involved in murders and assault," while "assault with a dangerous weapon focuses on punishing those who assault others with any kind of a dangerous weapon").

4. *Cf. Woodall v. United States,* 684 A.2d 1258, 1264–65 (D.C.1996) (there was no unfairness that met fourth prong of plain error test where, even though indictment charged defendant under superseded statute, the same facts that formed the basis for the indictment were presented at trial, defendant's conduct that was proven at trial was prohibited under a statute that was in effect, and defendant therefore suffered no prejudice).